(12 Misc. Rep. 174.)

## In re SWEELEY.

(Supreme Court, Special Term, Albany County. April 30, 1895.)

1. CONSTITUTIONAL LAW—ABROGATING INCONSISTENT STATUTE.
    Where a constitutional provision is repugnant to a statute in force when the constitution was adopted, it abrogates the statute, though it is not self-executing, and is left without any legislation in aid of it.

2. OFFICE AND OFFICER—APPOINTMENT OF SOLDIERS—EXAMINATION.
    Laws 1894, c. 717, exempting honorably discharged soldiers and sailors from the operation of the civil service laws, is repugnant to and abrogated by Const. 1895, art. 5, § 9, which requires applicants for positions in the civil service of the state and of the cities therein to be examined as to their fitness, but provides that honorably discharged soldiers and sailors shall be entitled to preference without regard to their standing on any list from which such appointment may be made.

3. REVIVAL OF STATUTE—ABROGATION OF REPEALING ACT.
    Laws 1884, c. 410, § 4, as amended by Laws 1886, c. 29, requiring honorably discharged soldiers and sailors to submit to examination for appointments in the civil service of the state and of the cities therein, being in harmony with Const. 1895, art. 5, § 9, which abrogates Laws 1894, c. 717, further amending and impliedly repealing the act of 1884, is thereby revived.

Application by George Sweeley for a writ of mandamus to compel the police commissioners of the city of Albany to administer to him the oath of office as a policeman, and to assign him to duty. Denied.

James W. Eaton, for the application.
William P. Rudd, Corp. Counsel, opposed.

HERRICK, J. In 1883 the legislature of the state of New York, by an act entitled "An act to regulate and improve the civil service of the state of New York" (chapter 354), provided for the appointment by the governor of a commission, designated "Civil Service Commission," consisting of three persons, whose duty it should be, among other things, to aid the governor in preparing suitable rules to carry into effect the purposes of the act, which rules, among other things, should provide "for open, competitive examinations for testing the fitness of applicants for the public service, now classified or to be classified hereunder." By section 8 of said act the mayor of each city of the state having a population of over 50,000 inhabitants was authorized "to prescribe such regulations for the admission of persons into the civil service of such city as may promote the efficiency thereof, and ascertain the fitness of candidates, in respect to character, knowledge, and ability, for the branch of the service into which they seek to enter." Pursuant to such act of the legislature, the mayor of the city of Albany, a city of over 50,000 inhabitants, prepared rules and regulations for the admission of persons into the civil service of said city; and in and by such rules it was provided that patrolmen in the police force of said city should be appointed "by selection from those persons graded highest as the result of open, competitive examinations." The regulations so made by the mayor of the city of Albany were ap-

proved by the civil service commission of the state. The collection or roll of names of the persons passing the required examinations under the rules adopted by the governor and civil service commission of the state, and the mayors of the several cities, and from which collection or roll appointments to the civil service of the state 'or of such cities were to be made, came to be known as the "eligible list," and upon it were entered the names of persons so qualified by such examinations, in the order of excellence by which they had passed the examinations to which they had been subjected.

. By chapter 410 of the Laws of 1884, chapter 354 of the Laws of 1883 was amended and added to, and section 4 of said amendatory act, being a new and additional section, provided that:

"Persons who served in the army or navy of the United States in the late war, and have been honorably discharged therefrom, * * * shall be preferred for appointment to positions in the civil service of the state, and of the cities affected by this act, over other persons (of equal standing), as ascertained under this act and the acts hereby amended."

In 1886 this law was further amended by chapter 29, which provided that persons who have served in the army or navy of the United States in the late war, and have been honorably discharged therefrom, shall be preferred for appointment to positions in the civil service of the state, and of the cities affected by said act, "over all other persons, though graded lower than others so examined and reported, provided their qualifications and fitness shall have been ascertained as provided under this act and the several acts hereby amended."

In 1894, by chapter 717, the law was further amended, so as to read that:

"The civil service rules and laws of this state shall not apply to such persons residents of this state, who have served in the army or the navy of the United States, and who have been honorably discharged therefrom, for any position or employment, compensation for which does not exceed four dollars per day, in the public departments, and upon all public works of the state of New York, and of the several cities, counties, towns and villages thereof."

This was the condition of the civil service laws of the state and of the city of Albany, so far as they affect the present application, when the new constitution was adopted, in the fall of 1894, and the policy of the state of ascertaining the merit and fitness of persons applying for appointments in the civil service of the state and the cities and villages thereof, by examination, was made part of the organic law by section 9, art. 5, of the constitution, reading as follows:

"Appointments and promotions in the civil service of the state, and of all the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations, which, so far as practicable, shall be competitive; provided, however, that honorably discharged soldiers and sailors from the army or navy of the United States in the late civil war, who are citizens and residents of this state, shall be entitled to preference in appointment and promotion, without regard to their standing on any list from which such appointment or promotion may be made. Laws shall be made to provide for the enforcement of this section."

After this section of the constitution had become part of the fundamental law of the state, and on the 26th day of February, 1895, the applicant, George Sweeley, applied to the board of police commissioners of the city of Albany for appointment as a patrolman. It appears that Sweeley is a person who served in the army of the United States in the late Civil War, and was honorably discharged therefrom. It also appears that he has passed a satisfactory physical examination, and is competent to act as a patrolman of the city police force, but he has passed no civil service examination, as prescribed by the rules and regulations made by the mayor, and approved by the state civil service commission, as hereinbefore set forth; and it is conceded that his name does not appear upon any list of persons eligible to appointment, upon the police force of the city of Albany. The compensation of a patrolman on the police force of the city of Albany is less than four dollars per day. The police board, upon the certificate of its examining surgeon as to his physical fitness and competency to discharge the duties of a patrolman, appointed said Sweeley to such position. The civil service examiners of the city of Albany, appointed under the civil service regulations of said city, thereafter called the attention of the police board to the provision of the constitution I have quoted. Objections were made by certain citizens of the city to the appointment of Sweeley, and upon his presenting himself before such board of police commissioners, and asking to be sworn in as such patrolman, and his warrant of office issued to him, and to be assigned to duty, the board of police commissioners refused his request, and adopted the following resolutions:

"The appointment of George Sweeley having been declared illegal by the corporation counsel, for the reason that he was not certified by the civil service commission, it is hereby resolved that his services be declined, and the chief, the captains, and sergeants of this department are hereby instructed to refuse his services, and each member of the board hereby refuses to administer the oath of office, for the above-mentioned reason."

Whereupon the said Sweeley makes this application for a peremptory writ of mandamus, to be directed to the police commissioners, and each of them, commanding and directing them to administer to him the legal oath of office as a patrolman on the police force of the city of Albany, and to issue to him his warrant of appointment as such patrolman, and assign him to duty. It is conceded by counsel that the remedy by mandamus is proper if the applicant is entitled to the office in question.

The only question raised and argued before me, and the only one I understand that it is desired to have considered, is as to the effect of the amendment to the constitution I have quoted, upon the civil service laws of the state and city, in so far as they relate to honorably discharged veterans of the late Civil War, and in particular its effect upon chapter 717 of the Laws of 1894. It is contended that the amendment to the constitution referred to does not affect the question, because, it is argued, such amendment is not self-executing. A constitutional provision is self-executing if it supplies a sufficient rule by means of which the right given may be

enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law. Cooley, Const. Lim. (6th Ed.) pp. 99, 100. And it is asserted that the amendment in question simply lays down principles for future legislation; that it does not prescribe the rules by which it may be enforced; and it is said that the amendment itself recognizes that fact in the last clause, which reads: "Laws shall be made to provide for the enforcement of this section." I apprehend that this argument is correct as far as it goes. So far as any affirmative effect is to be given to the amendment in question, it will be assumed that it needs legislation to give it life. But I cannot assent to the argument that, until the legislature passes laws to enforce it, it is absolutely a dead letter, and is as if it had never been adopted. It is possible that if there were no laws upon the subject in existence at the time of its adoption, upon which it could have a negative or nullifying effect, and none being passed after its adoption to enforce it, practically it would be as if it had never been adopted, except that no theretofore existing right could be affirmatively enforced in opposition to it. But I cannot agree to the proposition that, where there are laws upon the statute book upon a given subject, a constitutional enactment upon that same subject, subsequently adopted, in direct conflict with it, does not affect it, unless such constitutional enactment contains within its provisions the necessary machinery to affirmatively enforce it, and that, if it does not, the pre-existing law, although in terms and principle in direct hostility to the constitutional enactment, continues in force until the legislature provides the necessary machinery for enforcing, in an affirmative way, such provision of the constitution. Because the legislature, through neglect, or because of the lack of time, after the adoption of the constitution, has not provided the necessary means to enforce it, I cannot concede that a citizen has any rights which he can enforce contrary to its provisions.

I can conceive of a statute constituting an act which was theretofore lawful, and which people had a right to do, a crime, and yet when, through omission or neglect, no punishment had been prescribed, and none prescribed by any general statute, that a person doing the act so defined to be a crime could not be punished because no penalty had been decreed, and therefore no means provided to enforce the law. Nevertheless, the person committing such act would be violating the law; and I do not think that any one would for a moment contend that the courts would by their process enforce his claim to do that which was formerly his right to do, but which the statute defined to be a crime. So that such a statute, although no means had been provided to enforce it, would not be a dead letter, but have a negative and prohibitive force and effect. So, while a provision of the constitution may need legislation to enforce its principles, and give them affirmative effect, yet, without any legislation, such provision may have a negative force, in prohibiting acts in violation of its terms, and nullifying

statutes repugnant to its principles; and thus while, from lack of legislation, its principles cannot be affirmatively enforced, neither, on the other hand, can those principles be lawfully violated, or any statute violating them be enforced.

I will not discuss what negative effect the amendment in question, standing alone, may have in nullifying or repealing laws in existence at the time of its adoption which are repugnant to it. All parts of the constitution are to be construed together, and in connection with each other. Section 16 of article 1 of the constitution provides, among other things, as follows:

"Such acts of the legislature of this state as are now in force, shall be continued the law of this state, subject to such alterations as the legislature shall make concerning the same. But all parts of the common law, and such of the said acts, or parts thereof, as are repugnant to this constitution, are hereby abrogated."

And, in judging of the effect of the amendment under consideration upon theretofore existing laws, such amendment must be read in connection with section 16 of article 1. The civil service law of the state, as it was prior to the adoption of the new constitution, is, with the exception of the acts that have been passed relative to soldiers, in harmony with the constitution. The acts relative to soldiers are additions to the civil service law, and their repeal, or the repeal of such of them as are repugnant to the constitution, will not destroy the whole law, but will leave it a harmonious and complete law. The law under which the applicant claims his appointment to the police force is a law which entirely relieves honorably discharged soldiers of the late Civil War from subjection to the civil service laws of the state in cases where the pay of the position sought does not exceed four dollars a day. And the question that arises, therefore, is whether such a law is repugnant to the amendment of the constitution in question. That leads us to an examination of the meaning and intent of such amendment.

"It is a cardinal rule in the interpretation of constitutions that the instrument must be so construed as to give effect to the intention of the people who adopted it. This intention is to be sought in the constitution itself, and the apparent meaning of the words employed is to be taken as expressing it, except in cases where that assumption would lead to absurdity, ambiguity, or contradiction." Black, Const. Law, 65. It was the evident intention by this amendment to ingraft into the organic law of the state the principle of ascertaining the merit and fitness of applicants for appointment in the civil service of the state by examination, and also to provide for the extension of such principle beyond what was provided for in then existing laws or permitted by the old constitution. And it is apparent that, while it was intended to give veterans the preference, it was not intended that they should be relieved from demonstrating their fitness for official positions by submitting to an examination, but simply to give them a preference over those not soldiers, who had also had their fitness tested by examination. It is to be presumed that the framers of the section were acquainted with the existing civil service laws of the

state, and knew that under them appointments were made from a so-called "list"; that applicants for appointments were placed upon such list after an examination; and that the relative position or standing that they occupied on such list depended upon the manner in which they passed such examination. And it is to be presumed that, in making use of the language that they did, they had in view such existing laws. People v. Rathbone, 145 N. Y. 435, 438, 40 N. E. 395. And, therefore, it is plainly to be inferred from the language used, "shall be entitled to preference in appointment and promotion, without regard to their standing on any list from which such appointments or promotions may be made," that they had in contemplation a list, made up after an examination of the applicants, from which appointments should be made, upon which list the soldier applicant should secure a standing by examination.

In aiding us to determine what the framers of this section meant by the language used, the proceedings of the convention are of great assistance. As originally proposed, the section in question read as follows:

"Appointments and promotions in the civil service of the state, and of the cities, shall be made so far as practicable according to merit and fitness to be ascertained by examinations, which so far as practicable shall be competitive. Laws shall be made to provide for the enforcement of this section." Records N. Y. Cons. Con. p. 2438.

I will not refer to the various proceedings by which this section was afterwards altered, excepting as such alterations refer to the soldiers or sailors of the late Civil War. Under this proposed section, it will be observed that the veteran soldier was not mentioned; that it applied to all citizens of the state alike.

Subsequently the following amendment was proposed, to be added to the end of the section:

"Honorably discharged Union soldiers and sailors, who are not otherwise disqualified from appointment or promotion, shall be exempt from the provisions of this section."

This amendment was voted down (page 2444), and then the following substitute was offered:

"That honorably discharged soldiers and sailors of the late war shall be exempt from civil service examinations, and that all that shall be required of them, shall be capacity to perform the service for which they are applicable."

This was also negatived. Page 2444. Thereafter the following amendment was proposed:

"Honorably discharged Union soldiers and sailors shall be exempt from such examinations, and shall have preference to such appointments and promotions." Page 2546.

Another amendment was offered in the following words:

"Honorably discharged soldiers and sailors who served in the late war, who are not otherwise disqualified for promotion, shall be exempt from the provisions of said competitive examinations." Page 2547.

Still another amendment reading as follows was offered:

"Honorably discharged Union soldiers and sailors of the late civil war, shall be exempt from the examinations required by this section." Page 2549.

This section, with the various amendments, was the cause of much debate, which, of course, it is impracticable to reproduce here, showing the desire and intention of those offering the several amendments to exempt soldiers and sailors of the late war from the operation of the civil service laws of the state, and of the proposed section of the constitution. In the course of the debate, chapter 717 of the Laws of 1894 was referred to, and the lines were sharply drawn between those who desired to entirely exempt soldiers of the late war from the operations of the civil service law, and the principle of ascertaining the fitness of candidates seeking appointment to public office by examination, and those who were willing to give them a preference, after they had demonstrated their fitness by being subjected to such examination, over others, not soldiers and sailors, whose fitness had also been tested by examination. This contest eventuated in the offering and adoption of the following provision:

"Provided, however, that honorably discharged soldiers and sailors of the United States in the late Civil War, shall be entitled to preference in appointment and promotion, without regard to their standing on any list from which appointments or promotions shall be made." Records N. Y. Cons. Con. p. 2554.

This amendment being adopted, the president of the convention stated that that disposed of the necessity of taking a vote upon any of the other proposed amendments; and after amending it by inserting the words "army and navy of the," and the words "citizens and residents of this state," making it read as it now is in the constitution, it was formally adopted by the convention. Page 2645.

It will be seen by this review of the various steps taken in perfecting the section under consideration, and from the defeat of every amendment that proposed to exempt them from the operation of the civil service law, or from examinations to test their fitness for office, that it was the evident intention of the framers of the constitution to subject the soldiers and sailors of the late war to the operations of the civil service law, simply giving them a preference over others whose qualifications had been tested by examination; and the language by which they evidenced that intent, while perhaps not so clear as it might be, still sufficiently expresses it; and we must presume that the people who voted for and adopted it had the same intention in so doing, as the convention which framed it. Such being the intention of the people and the meaning of the constitution, if after the 1st of January, 1895, the legislature had passed a law relieving all applicants for positions in the civil service of the state, or of any of the cities thereof, who are honorably discharged soldiers and sailors of the late Civil War, from the operations of the civil service laws of the state, I think no one would contend but that such law was in conflict with the constitution, and therefore null and void. If a law passed after the constitution went into effect is unconstitutional and void because in conflict with the constitution, the same law passed prior to the adoption of the constitution is "repugnant"

to it, and under section 16 of article 1, as hereinbefore set forth, is abrogated.

It follows from this that chapter 717 of the Laws of 1894, being a law which exempts honorably discharged soldiers and sailors from the operations of the civil service law of the state, and from being examined to test their fitness, in cases where they are applicants for positions the pay of which does not exceed four dollars per day, is in conflict with the provisions of the section of the constitution in question, and repugnant to its principles, and is therefore abrogated.

Section 4 of chapter 410 of the Laws of 1884, as amended by chapter 29 of the Laws of 1886, being in harmony with the constitution, is not abrogated by it; and the law by which it is amended, and by implication repealed (chapter 717, Laws 1894), being abrogated and repealed, it is revivified and again becomes a part of the law of the state. We thus have without any legislation to carry this section of the constitution into affirmative effect, but by the force and effect of the provision of the constitution abrogating and repealing theretofore existing laws repugnant to it, and continuing in effect those laws not repugnant to it, a civil service law to which the applicant, although an honorably discharged soldier of the late Civil War, is subject, under the provisions of which he must be examined to test his fitness for the position he aspires to, and be placed upon the eligible list, where he can be given a preference over all others, not soldiers or sailors, who have also been placed upon such list as the result of the examinations to which they have been subjected.

This conclusion leads to a denial of the application for a mandamus, but as the question is a new one, about which there has arisen differences of opinion among persons learned in the law, it is denied without costs; denied, not as a matter of discretion, but as a matter of law.