GEORGE KEYMER, Respondent; CIVIL SERVICE COMMISSION OF THE CITY OF BROOKLYN, Appellant.*

*Preference given to veteran soldiers and sailors by the Constitution — limit of the legislative power — a rule based upon compensation is invalid — chapter 344 of 1895 — a violation of § 9 of article 5 of the New York Constitution.*

Chapter 344 of the Laws of 1895, which provides that persons who served in the army or navy of the United States·in the late civil war and have been honorably discharged therefrom, shall be certified as such by the commissioners or board of officers authorized to report names for appointment or promotion, to the appointing officer or other appointing power, and when such honorably discharged soldiers and sailors are applicants, they shall be preferred for such

---

*Decided September, 1895.

appointment and promotion, and competitive examinations shall not be deemed practicable or necessary in cases where the compensation or other emolument of the office does not exceed four dollars per day, but the examination shall be such as is calculated only to ascertain the merit and fitness of the applicant for the position for which he applies, and, if found fitted to fill such position, the applicant's name shall be placed on the eligible list, and he shall be certified therefrom, in so far as it declares competitive examinations not to be practicable or necessary, is in conflict with section 9 of article 5 of the Constitution of the State of New York, and is void in that it creates a preference to veterans of the late civil war which it is beyond the power of the Legislature to grant.

The effect of the constitutional provision (§ 9 of art. 5) is to bring the whole civil service of the State of New York under the operation of the Civil Service Laws. Veteran soldiers and sailors have the preference that the Constitution gives them; this preference is exclusive of all others, and the Legislature can give them no more.

The power to determine in what cases competitive examinations are practicable does not include the power to exempt or relieve one class of citizens from such examinations and exact them from others. All applicants for the same office, in reference to the manner of examination, must be treated alike.

The expression in the Constitution, "so far as practicable," qualifies the declaration that merit and fitness for office shall be ascertained by examination as well as the declaration that such examination shall be competitive.

The plain purpose of chapter 344 of the Laws of 1895 is to extend to the veteran soldiers and sailors a preference in appointment that is not given to them by the Constitution — which it is not within the power of the Legislature to do.

The judgment of the Legislature upon the propriety of laws passed in the exercise of discretionary power is not final but is subject to the review of the courts. Laws passed pursuant to a constitutional limitation, that they shall relate to the enforcement or carrying out of the constitutional mandate, are always •open to judicial review.

It is within the power of the Legislature to determine in the case of what offices or class of offices examinations or competitive examinations for positions in the civil service of the State of New York are practicable, but whether a particular statute is a valid exercise of that power is a judicial question.

The power of the Legislature, by section 9 of article 5 of the Constitution of the State of New York, is restricted to the passage of laws for the enforcement of such section. The limit of legislative power is thus accurately defined, and the validity of every law relating to appointments and promotions in the civil service of the State, or of the municipal corporations thereof, is to be tested by the inquiry whether the statute tends to enforce the provisions of the Constitution, and if it is apparent that such is not the real object and purpose of a law the courts will interfere and protect the constitutional rights of the people. A statutory rule on this subject cannot rest upon the fact of the amount of compensation attached to the office without reference to the duties of the office and the character of the services to be performed; such a rule would annul the constitutional mandate, would transcend the power of the Legislature and be void.

APPEAL by the Civil Service Commission of the City of Brooklyn from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 14th day of June, 1895, directing that a peremptory writ of mandamus issue to the Civil Service Commission of the city of Brooklyn, requiring it to examine the relator for the position of messenger in the civil service, in pursuance of chapter 344 of the Laws of 1895.

*Albert G. McDonald,* for the appellant.

*Horatio C. King* and *Jesse Johnson,* for the respondent.

BROWN, P. J. :

On May 17, 1895, the respondent presented to the civil service commission of the city of Brooklyn an application of which the following is a copy :

"BROOKLYN, N. Y., *May* 17, 1895.
" CIVIL SERVICE COMMISSION OF BROOKLYN,
        " W. J. D. CAMPBELL, Esq., *Secretary :*

" DEAR SIR.— I respectfully apply for a non-competitive examination as messenger in the service of the city of Brooklyn, in pursuance of and in conformity with chapter 344 of the Laws of New York, which became a law April 18, 1895.

" I served in the army of the United States in the late Civil War, and have been honorably discharged therefrom.

        " An early reply will oblige,
                " Very truly yours,
                        " GEORGE KEYMER."

This application having been denied, the respondent instituted this proceeding, and the order appealed from directs that a peremptory mandamus issue directed to said civil service commission, requiring it to examine said respondent for the position of messenger in the civil service of said city, pursuant to chapter 344 of the Laws of 1895.

The statute referred to in the order of the court, so far as it is material to the case before us, is as follows :

" In grateful recognition of the services, sacrifices and sufferings

of persons who served in the army or navy of the United States, in the late civil war, and have been honorably discharged therefrom, they shall be certified as such by the commissioners or board of officers authorized to report names for appointment or promotion to the appointing officer or other appointing power, and when such honorably discharged soldiers and sailors of the late civil war are applicants they shall be preferred for such appointment and promotion, and competitive examinations shall not be deemed practicable or necessary in cases where the compensation or other emolument of the office does not exceed four dollars per day, but the examination shall be such as is calculated only to ascertain the merits and fitness of the applicant for the position for which he applies, and, if found fitted to fill such position, the applicant's name shall be placed on the eligible list, and he shall be certified therefrom."

It is the contention of the appellant that this statute, so far as it declares competitive examinations not to be practicable or necessary, is in conflict with section 9, article 5 of the Constitution, and is, therefore, void, while the respondent claims, and the learned judge who heard the case at Special Term has decided, that what is practicable or impracticable in respect to examination, is, by the Constitution, left to the judgment of the Legislature ; and that the judgment of that body is not subject to the review of the courts.

The constitutional provision is as follows :

" Section 9. Appointments and promotions in the civil service of the State, and of all the civil divisions thereof, including cities and villages, shall be made according to merit and fitness, to be ascertained, so far as practicable, by examinations, which, so far as practicable, shall be competitive ; provided, however, that honorably discharged soldiers and sailors from the army and navy of the United States in the late civil war, who are citizens and residents of this State, shall be entitled to preference in appointment and promotion, without regard to their standing on any list from which such appointment or promotion may be made. Laws shall be made to provide for the enforcement of this section."

Prior to the adoption of the present Constitution, the Civil Service Laws existed solely by statute and were subject to changes or repeal at the will of the Legislature. The first statute was passed in 1883 (Chap. 354). That act was repeatedly amended, and there was

a gradual relaxation of its provisions with reference to honorably discharged soldiers and sailors who had served in the war, until finally, by chapter 717 of the Laws of 1894, the Legislature declared that the Civil Service Laws did not apply to such persons for any position the compensation of which did not exceed four dollars per day.

Under the decision of the Court of Appeals in the case of *The People ex rel. Killeen* v. *Angle* (109 N. Y. 564), persons employed under the direction of the Superintendent of Public Works and in the State prisons were also exempted from the operation of the Civil Service Laws. But with these exceptions the laws were applicable to all other persons in the civil service of the State and the cities thereof, and it was provided that the fitness of applicants for office should be tested by open competitive examination. (Laws of 1883, chap. 354, § 2; Laws of 1883, chap. 354, § 8, as amended by Laws of 1884, chap. 410, § 2.) And such were the regulations for the city of Brooklyn.

The effect of the provision of the Constitution referred to has recently been considered in another branch of this court in two cases.

In *People ex rel. McClelland* v. *Roberts* (34 N. Y. Supp. 641) it was decided by Justice HERRICK that appointments in the Department of Public Works and in the State prisons were now subject to the Civil Service Laws; and in *The Matter of Sweeley* (12 Misc. Rep. 174) the same justice decided that the constitutional provision had abrogated chapter 717 of the Laws of 1894, and that soldiers and sailors of the late war are now subject to the operation of said laws, and that the preference in appointment and promotion that the provision in question gives to them, is a preference of selection from an eligible list made up after examination of applicants, upon which list the soldier applicant must secure a standing by examination.

This decision was affirmed by the Court of Appeals without opinion, all the judges concurring except Judge PECKHAM, who did not sit.

The effect of the constitutional provision, therefore, is that the whole civil service of the State has been brought under the operation of the Civil Service Laws. Veteran soldiers and sailors have the preference that the Constitution gives them. This preference is

exclusive of all others. The Legislature can give them no more. If, therefore, the law which is referred to in the order of the court is applicable only to veterans, it creates a preference that it was beyond the power of the Legislature to grant, and is void.

The power to determine in what cases competitive examinations are practicable does not include the power to exempt or relieve one class of citizens from such examination and exact them from others. All applicants for the same office, in reference to the manner of examination, must be treated alike.

We are of the opinion that the law, by its express terms, applies only to veterans of the war.

The original Civil Service Law of 1883 contained no provision exempting veteran soldiers and sailors from its operation. That exemption was first made by chapter 410 of the Laws of 1884. That act was an amendment of the law of 1883; but the exemption was contained in a new section which was added to the original law. This section related solely to veteran soldiers and sailors. It was amended in 1886 and again in 1894, and in each amendment it related solely to the exemption of soldiers and sailors from the operation of the Civil Service Laws. The law referred to in the order appealed from is, in form, again an amendment of the original section in the statute of 1884. It provides that in recognition of the services of those who served in the army and navy in the late Civil War and were honorably discharged therefrom, they shall be certified as such by the commissioners, and when such honorably discharged soldiers and sailors are applicants they shall be preferred for appointment. It then declares competitive examinations not practicable or necessary, and that the examination shall be in effect non-competitive, and if found fitted to fill the position for which he applies, the applicant's name shall be placed on the eligible list.

The further provisions of the law relate exclusively to the appointment of soldiers and sailors to positions of which the compensation exceeds four dollars per day. The history and context of the law both show that it relates solely to veterans. It is true that the sentence which declares competitive examinations impracticable, if it stood alone, would apply to all applicants. But it does not stand in the law as a separate sentence, but as part of a provision relat-

ing only to soldiers and sailors. It cannot be separated from the context, and its plain reference is to the examination of applicants who are veteran soldiers and sailors. It is the soldier who is referred to as "applicant," and whose name is to be placed on the eligible list after an examination, calculated only to ascertain his fitness, and it is as to such applicants that competitive examinations are declared not to be practicable or necessary. Moreover, if it was intended that this law should be applicable to all applicants for office, the amendment would naturally have been to section 2 of the act of 1883, or section 8 as amended by the act of 1884. Section 2 of the act of 1883 provides for open competitive examinations as to all offices " as nearly as the conditions of good administration will warrant."

That those sections of the law were left to stand as originally enacted, and the amendment inserted in the section which related only to veterans, is strong evidence that the Legislature intended it to be applicable only to veterans. It is intelligible that the Legislature, overlooking the effect of the provision of the Constitution which had gone into operation only on January 1, 1895, should desire and intend to give a preference in the appointments to the civil service to the veterans of the war, but I have too much respect for the intelligence of that body to suppose that it intended to declare as its deliberate judgment that a competitive examination was impracticable for an office when the compensation did not exceed four dollars per day, but practicable if the compensation did exceed that sum by the merest trifle.

We are of the opinion, therefore, that the court erred in holding that the law applied to all applicants for office. Its plain purpose is to extend to the veteran soldiers and sailors a preference in appointment which is not given to them by the Constitution, and for that reason it was not within the power of the Legislature, and is void.

But if we could give to this law a general application to all applicants for appointment and promotion, we are of the opinion that it could not be sustained as a valid exercise of power by the Legislature.

That the judgment of the Legislature upon the propriety of laws passed in the exercise of discretionary power is not final, but is subject to the review of the courts, has been frequently decided. Thus, the

power of taxation, which is the broadest possessed by the Legislature, is not without its limitation, and its action in reference thereto is constantly reviewed by the courts. In the exercise of the power of eminent domain, although the Legislature may declare the use for which property is sought to be taken a public one, that determination is not conclusive, but may be reviewed by the courts and the question determined as one of fact; and any owner of property, which it is sought to take for a use which is in fact private, may invoke the aid of the courts to protect his property against invasion. (*Rockwell* v. *Nearing*, 35 N. Y. 302; *Matter of Deansville Cemetery Assn.*, 66 id. 569; *Matter of Eureka Basin Warehouse & Manfg. Co.*, 96 id. 42.)

The exercise of the police power by the Legislature is constantly reviewed, and its action thereon frequently annulled by the courts. (*Matter of Jacobs*, 98 N. Y. 98; *People* v. *Marx*, 99 id. 377.)

And, in reference to the power given to Congress by the Federal Constitution to pass laws which shall be necessary for carrying into execution the enumerated powers of the general government, the Supreme Court of the United States has frequently held that the question whether such laws were properly passed was open to judicial inquiry. (*M'Culloch* v. *Maryland*, 4 Wheat. 316; *Hepburn* v. *Griswold*, 8 Wall. 603.) Also, see the *Legal Tender* cases, and the recent cases, as to the validity of the income tax.

These citations show that laws passed pursuant to a constitutional limitation that they shall relate to the enforcement or carrying out of a constitutional mandate, are always open to judicial review.

It may be conceded as a general proposition that it is in the power of the Legislature to determine with reference to what offices or class of offices examinations or competitive examinations are practicable, but whether a particular statute is a valid exercise of that power is a judicial question.

It will be observed that the power of the Legislature is, by the section quoted, restricted to the passage of laws for the enforcement of this section. The limit of legislative power is thus accurately defined, and the validity of every law relating to appointments and promotions in the civil service of the State or of the municipal corporations thereof, is to be tested by the inquiry whether the statute tends to enforce the provision of the Constitution. If it is apparent

that such is not the real object and purpose of a law, the courts will interfere and protect the constitutional rights of the people.

The expression "so far as practicable," which is used in this provision of the Constitution, qualifies the declaration that merit and fitness for office shall be ascertained by examination as well as the declaration that such examination shall be competitive, and if the Legislature have power to determine that competitive examinations are not practicable with reference to certain offices they have equal power to declare that all examinations as to such offices are impracticable. It is also clear that if the Legislature may determine that examinations are not practicable with reference to offices to which is attached a stated compensation, it may fix the limit of compensation at any sum it chooses, and that it is thus within its power to include within such limitation the whole civil service of the State.

To uphold the law in question, therefore, requires the recognition of a power in the Legislature to annul the constitutional provision altogether.

If the Legislature should pass a law which should declare that examinations should be deemed impracticable with reference to all appointive offices in this State, there is no one, I think, who would hesitate to say that such a law was unconstitutional. Yet if we admit the power to pass the law in question, that is precisely what the Legislature may do. Questions of power do not depend upon the manner in which they are exercised. If the power exists it may be exercised at the will of those who possess it, and if the Legislature may declare that examinations are not practicable with reference to an office with a named salary, it may so declare with reference to all offices in the State. The constitutional guaranty, that merit and fitness for office, to be ascertained by examination, should be the sole basis for appointment in the civil service, would be of very little worth if the Legislature may so easily destroy it. Under such a construction no advance has been made by the insertion of the principle in the Constitution, as its operation is still made dependent on the will of the Legislature.

In construing the section of the Constitution with reference to appointments in the civil service, we must keep in mind that the Constitution did not, in this respect, establish a new rule or principle of government, but engrafted upon and embodied in the fun-

damental law of the State a principle in reference to appointments
to office that had been in operation in the State for upwards of ten
years, and in determining the purpose and intent of this provision
of the Constitution we must assume that the convention that framed
it and the people who adopted it had in view the then existing laws.
Looking, therefore, at the history of the law, the obvious intent in
embodying this principle in the Constitution was to restrict
the power of the Legislature upon the subject, and to withdraw
from its power of determination the question whether merit and fit-
ness should thereafter prevail in appointments to office in the civil
service of the State.

It would be difficult to define the extent of the legislative power
to declare in what cases examinations or competitive examinations
are not to be deemed practicable. It is not necessary to do that in
this case, and we shall not attempt it. It is only necessary to say
that laws passed in the exercise of that power must have some rela-
tion to the objects and ends which the people by adopting the con-
stitutional provision intended should prevail in the civil service of
the State. It is too plain to need argument that the practicability
or impracticability of an examination to ascertain the fitness of
applicants for office has no relation to and does not depend on the
compensation attached to the office. A rule upon that subject must
have relation to the duties of the office and the character of the serv-
ices to be performed. Illustrations of the proper distinctions in this
respect are to be found in the regulations now existing in the civil
service of the State and in the cities.

We are of the opinion that no valid rule on this subject can rest
upon the fact of the amount of compensation attached to the office
without some reference to the duties of the office and the character
of the services to be performed; and the reason is obvious that such
a rule has no tendency to enforce the constitutional provision, but
annuls it absolutely as to all offices within the limit of compensation
named. Such a law is opposed to the rule established in the statute
of 1883 and to the experience of the State thereunder. The rule as
to open competitive examinations and the manner of its operation
and effect were well known to the people of the State when the
Constitution was submitted to the popular vote. It had been in
operation in the Federal service in this and other States for ten

years.   That the people intended to embody the result of that experience in the fundamental law of the State is beyond question, and in construing the power of the Legislature over the manner of examination we must give due and proper effect to that purpose and intent.

A rule such as the law under consideration would establish, if we should construe it as having a general application, would not tend in any way to enforce the constitutional mandate, but would *pro tanto* annul it, and for that reason it would transcend the power of the Legislature and be void.

The order appealed from must be reversed, and the motion denied.

PRATT and DYKMAN, JJ., concurred.

Order reversed, and motion denied.