## CHITTENDEN et al. v. WURSTER et al.

(Supreme Court, Appellate Division, Second Department. February 19, 1897.)

1. CONSTITUTIONAL LAW—EXISTING STATUTES—OPERATION.

    By Const. 1895, art. 1, § 16, which provides that "such acts of the legislature of this state as are now in force shall be and continue the law of this state, subject to such alteration as the legislature shall make concerning the same. But * * * such of the said acts. or parts thereof, as are repug-

nant to this constitution, are hereby abrogated,"—it was intended to put all the new provisions of the constitution into operation through the instrumentality of such laws as were then in force, so far as practicable, but which, where insufficient, were to be replaced or supplemented.

**2. SAME—SELF-EXECUTING PROVISIONS.**

The provisions of Const. 1895, art. 5, § 9, which require all appointments in the civil service of the state to be according to merits and fitness, to be ascertained as far as practicable by examination, are self-executing; and the provision that "laws shall be made for the enforcement of this section" means only that existing statutes shall be supplemented by such as are necessary to carry into effect the details of the system.

**3. SAME—CIVIL SERVICE—STATUTE PROVISIONS SUPERSEDED.**

So far as the civil service act of 1883 and its amendments made the classification of appointments to office discretionary with the governor and mayors, they have been superseded by Const. art. 5, § 9, requiring that all appointments shall be made by competitive examination as far as practicable.

**4. CIVIL SERVICE EXAMINATIONS—PRACTICABILITY—QUESTION OF LAW.**

Under Const. 1895, art. 5, § 9, requiring all appointments in the civil service to be according to merit, to be determined, as far as practicable, by examination, where the character of an office is ascertained, whether competitive examination for appointment to that place is practicable is determinable by the court as a matter of law, in the light of the proof and of common knowledge as applied to the subject-matter.

**5. SAME—PRACTICABILITY DETERMINED BY ADMINISTRATIVE OFFICERS—REVERSAL.**

Where administrative officers have determined that examinations for appointment to a particular office in the civil service are not practicable, if the case presented is fairly debatable, and one as to which men may reasonably differ, the courts will not reverse the determination of the officers.

**6. MUNICIPAL OFFICES—APPLICATION OF CIVIL SERVICE STATUTES.**

The civil service act, requiring competitive examinations for appointments to office, applies to the offices of clerk to committees in the board of aldermen, warrant clerk in the department of finance, law clerk in the department of law, surveyor in the department of assessment, finance clerk in the department of health, etc., in the city of Brooklyn.

**7. CIVIL SERVICE—CONFIDENTIAL RELATION—SUBDIVISION OF DUTY.**

Where an office is confidential in relation to a superior, and possibly not within the civil service act, the superior cannot, by dividing the duty among many clerks, obtain exemption for all from competitive examination to determine fitness for appointment.

Appeal from special term, Kings county.

Bill by Simeon B. Chittenden and others against Frederick W. Wurster, as mayor, etc., and others, in the municipal service of Brooklyn, to restrain the payment of salaries to defendants. From a judgment in favor of plaintiffs, defendants appeal. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Joseph A. Burr, for appellants.
Edward M. Shepard, for respondents.

GOODRICH, P. J. The plaintiffs, taxpayers of the city of Brooklyn, bring this action against the mayor, comptroller, city auditor, city clerk, city treasurer, and 11 persons in the municipal service of the city of Brooklyn, to restrain the payment of salaries to such persons, on the ground that they were appointed to office since January 1, 1895, without examination, competitive or otherwise, although such examinations were practicable, and that such appoint-

ment was within the inhibition of section 9 of article 5 of the constitution of 1895.

The section in question reads as follows:

"Appointments and promotions in the civil service of the state, and of all the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations, which, so far as practicable, shall be competitive; provided, however, that honorably discharged soldiers and sailors from the army and navy of the United States in the late Civil War, who are citizens and residents of this state, shall be entitled to preference in appointment and promotion, without regard to their standing on any list from which such appointment or promotion may be made. Laws shall be made to provide for the enforcement of this section."

The constitution is the basic and fundamental law. To this ultimate and supreme mandate of the people, uttered by its delegates in convention assembled, it is the duty of all departments of the state government, executive, legislative, and judicial, to bow in instant and willing obedience. It is our duty to interpret and apply it reasonably, but firmly, to the questions involved in this appeal.

In the case of People v. Potter, 47 N. Y. 375, 380, it was said that a constitution is to be held as prepared and adopted with reference to existing statutory laws upon the provisions of which in detail it must depend to be set in practical operation. This opinion is also emphasized by section 16 of article 1 of the constitution:

"Such acts of the legislature of this state as are now in force shall be and continue the law of this state, subject to such alterations as the legislature shall make concerning the same. But * * * such of the said acts, and parts thereof, as are repugnant to this constitution, are hereby abrogated."

The principle of civil service examinations was new to the constitution, though not new to the statutory laws of the state. In 1883 the legislature passed the act commonly called the "Civil Service Act" (Laws 1883, c. 354, amended in 1884), and these acts established the "Civil Service Commission," and provided for appointments to the public service after examination of applicants, and for the means of such examination. It was made the duty of the civil service commissioners to aid the governor in preparing suitable rules for carrying the act into effect, which rules should provide "as nearly as the condition of good administration will warrant," among other things: First, for open, competitive examinations for testing the fitness of applicants for the public service, such examinations to be practical in their character; second, that all offices should be filled by selections from among those graded highest at such examinations; third, for a period of probation before absolute appointment; and, fourth, for noncompetitive examination, when competition might not be found practical. Section 6 made it the duty of the governor to cause to be arranged in classes the several clerks and persons employed in the public service, for examination, and to include in such classes, "so far as practicable," all subordinate places in the public service of the state. Section 7 provided that no person should be admitted to, or promoted in, either of the classes, till he had passed an examination, or was shown to be exempt from such examination. The appointing power was required to report all appointments to the civil service commission, which was required to

certify such appointments to the comptroller; and the latter was forbidden to pay the compensation of any officer in either of said classes until so certified. Section 8 directed mayors of cities to prescribe such regulations for the admission of persons into the civil service of such city as should "best promote the efficiency thereof," and to employ suitable persons to make such examinations, and to prescribe their duties, and establish regulations for the conduct of persons who should be appointed in the service; to cause to be arranged in classes the persons employed; and to include in one or more of such classes, "so far as practicable," all subordinate clerks and officers in the public service of the city. No person was to be admitted to either class until he had passed the examination, or was shown to be exempted therefrom. Thus, it will be seen that at the time of the adoption of the constitution there was in force a regular system of civil service machinery, adequate to the examination and appointment of persons to the public service in the state and in the cities, and the legislature has not deemed it necessary to provide further laws for the enforcement of the civil service article of the constitution.

In the case of People v. Draper, 15 N. Y. 543, Denio, C. J., said:

"The people, in framing the constitution, committed to the legislature the whole lawmaking power of the state which they did not expressly or impliedly withhold. Plenary power in the legislature for all purposes of civil government is the rule. A prohibition to exercise a particular power is an exception."

See, also, Rathbone v. Wirth, 150 N. Y. 470, 45 N. E. 15.

It must be assumed that the constitutional convention had this law and these facts in mind in adopting the civil service article, and such has been the decision of the courts upon this subject.

In the oft-approved opinion of Mr. Justice Herrick in People v. Roberts, 91 Hun, 117, 34 N. Y. Supp. 650, it was stated:

"The members of the constitutional convention being assumed to have known the nature and effect of the then existing laws, and having provided for their continuance where in harmony with the new constitution, we must also assume that they depended upon them, supplemented by such new legislation as should be necessary to carry into effect the details of the constitution."

This gives force to the clause of section 9, "Laws shall be made to provide for the enforcement of this section."

Judge Herrick also said:

"It seems to me, therefore, that in reading section 3 of article 5, in connection with section 9 of that article, and considering the language used, the history and condition of the law as it was under the old constitution, taken in connection with the proceedings in the constitutional convention, it was the plain intent of the framers of the constitution, and of the people who adopted it, that all appointments in the civil service of the state should be made according to merit, to be ascertained, as far as practicable, by examination." Page 115, 91 Hun, and page 649, 34 N. Y. Supp.

He further says:

"The civil service laws of the state are in harmony with the present constitution. They are thus of the same force and effect as if they had been passed after the present constitution took effect, and can be used, so far as they go, to enforce its provisions." Page 117, 91 Hun, and page 650, 34 N. Y. Supp.

"Where the language used in the constitution and in a previously existing stat-

·ute is so nearly the same in meaning, it seems to me that we can well say that the framers of the constitution had such statute in view, and relied upon it to ·enforce the provisions of that portion of the constitution under consideration." Page 119, 91 Hun, and page 651, 34 N. Y. Supp.

In Re Sweeley, 12 Misc. Rep. 181, 33 N. Y. Supp. 369, Judge Herrick had previously come·to the same conclusion, that the civil service .acts of the legislature were in harmony with the constitution, ex· cept as to the parts relative to veterans.

The opinion of Justice Herrick in People v. Roberts, 13 Misc. Rep. 448, 34 N. Y. Supp. 641, was approved and adopted by the appellate division as its own (91 Hun, 101, 34 N. Y. Supp. 641, and 36 N. Y. Supp. 677); and the judgment was affirmed in the court of .appeals (148 N. Y. 360, 42 N. E. 1082), Judge O'Brien writing the prevailing opinion. He said:

"It is evident from the language of the new provision of the constitution, and ·from the debates in the convention which followed its introduction into that body, that it was framed and adopted with reference to existing laws, which were intended to give it immediate practical operation. * * * The mandate for the .legislature to enact laws to provide for the enforcement of the section does not in any degree conflict with this view. That was a prudent and proper, though perhaps unnecessary, precaution. But it affords no ground for the inference that. the people intended to ignore the aid and utility of existing laws, to give imme·diate, practical effect to the principle, or that they were content to wait for the reform until the legislature should make new regulations on the subject. It was the intention to put all the new provisions of the constitution into operation through the instrumentality of such laws as were then in force, ˙so far as practicable; and if, in practice, they were found to be in any respect insufficient for that purpose, they were to be replaced or supplemented by new ones. This view does not depend entirely upon construction, since the instrument itself contains an express provision on that subject. The people declared in section.sixteen of article one that 'such acts of the legislature of this state as are now in force shall be and continue the law of this state, subject to such alterations as the legislature shall make concerning the same. But all such parts of the common ˙law, and such of the said acts, or parts thereof, as are repugnant to· this constitu-tion, are hereby abrogated.' " Page 369, 148 N. Y., and page 1085, 42 N. E.

It seems clear to me, therefore, that we may well say that the framers of the constitution had such statute in view, and saw in it methods sufficient to enforce the provisions of that portion of the constitution under consideration. The constitution provides for four classes of appointments to the civil service: First, appointments to be made on merit and fitness, to be ascertained, so far as practicable, by competitive examination; second, appointments to be made on merit and fitness, to be ascertained by non·competitive examination; third, appointments to be made on merit .and fitness, without anv examination; fourth, appointments of "veterans" preferentially after examination.

In People v. Roberts, 148 N. Y. 366, and 42 N. E. 1084, Judge ·O'Brien says:

"The principle that all appointments in the civil service must be made according to merit and fitness, to be ascertained by competitive examinations, is expressed in such broad and imperative language that in some respects it must be ·regarded as beyond the control of the legislature, and secure from any mere ·statutory changes. If the legislature should repeal all the statutes and regulations on the subject of appointments in the civil service, the mandate of the con-stitution would· still remain, and would so far execute itself as to require the

courts, in a proper case, to pronounce appointments made without compliance with its requirements illegal."

In Re Keymer, 148 N. Y. 226, 42 N. E. 669, Judge Bartlett, writing the opinion of the court, says:

"The constitution contemplates that it may not always be practicable to ascertain merit and fitness by examinations, or to have these examinations competitive."

He also says:

"It is quite possible that there are or will be offices or positions, by reason of peculiar duties, which experience will demonstrate cannot be filled by competition; and, when such a case arises, it will be competent for the legislature to provide for it by an appropriate act disclosing the circumstances which justify its intervention."

I have been unable to find any adjudication upon the powers of the mayor under section 8 of the statute of 1883, but in Justice Herrick's opinion he says:

"The governor has acted upon the power conferred upon him by the statute, and has determined that it is practicable to test the merit and fitness of candidates for positions in the department of public works by examination." Page 119, 91 Hun, and page 651, 34 N. Y. Supp.

This is measurably a judicial approval of the exercise by the governor of the power of classification conferred upon him. If conferring such power upon the governor was not contrary to the constitution, I see no reason why a similar power has not been lawfully conferred by the act upon the mayors of cities.

With this exposition of the law as it has been announced, I proceed to consider the decision of Mr. Justice Keogh at special term. There was abundant evidence to show, and there was no contrary evidence:

"First. That the oral testimony and documentary evidence in this case prove very clearly that it is practicable to ascertain by competitive examination the merit and fitness of a person to be appointed to each of the positions filled by the several defendants.

"Second. That the action of the mayor of Brooklyn in placing such positions in the noncompetitive class, and requiring them to be filled therefrom, without competitive examination, is illegal, and, as such, is subject to review by this court."

It appears by the evidence that all of the 11 appointments were made since January 1, 1895. They are J. Nelson Magee, clerk to committees in the board of aldermen; Thomas Foulks, warrant clerk or assistant warrant clerk in the department of finance; William J. Cox, dockmaster in the department of finance; Erastus Everitt, Jr., chief clerk in the department of audit; Edward M. Perry, law clerk in the department of law; John Hurley, surveyor in the department of assessment; Frederick P. Auwell, finance clerk in the department of health; Revilo Wells, license fee collector of the department of fire; Edward Fackner, secretary in the department of buildings; James Newland, stamp clerk in the water-bureau department of city works; Alfred T. Hobley, license clerk or deputy license clerk in the city clerk's office. The answer admits that the 11 appointments were not made through the civil

service commission, and that none of the persons were appointed as a result of competitive examination; that Mayor Low determined that it was not practicable to fill the positions occupied by Magee, Foulks, Cox, Everitt, and Auwell by competitive examination, and therefore assigned the same to Schedule A, the persons named in which could be appointed without examination; that Mayor Schieren took similar action in respect to the positions occupied by Hurley, Fackner, and Hobley; and that Mayor Wurster also took similar action in regard to the position occupied by Wells. Notwithstanding that the several mayors assigned the positions in question to Schedule A, the noncompetitive class, the evidence shows that it was practicable to fill these places by competitive examination, and that similar positions in the federal government and in the city of New York, as well as in the city of Brooklyn, have been filled after competitive examinations. This appears by the evidence of Theodore Roosevelt, president of the New York police department; Emmons Clark, secretary of the New York board of health; Everett P. Wheeler, chairman of the civil service commission of the city of New York; Silas W. Burt, member of the state civil service commission, formerly chief naval officer of the port of New York; and Alfred T. White, formerly commissioner of city works in Brooklyn,—and no evidence was even offered to contradict it or make it doubtful. It appears by the evidence of these witnesses that appointments to office similar to those in question, which were made upon competitive examination, were sufficiently and satisfactorily filled, and that competitive examination of candidates for such offices has resulted beneficially to the public welfare.

For many years before civil service was dreamed of, the policy of the law compelled the examination of applicants for admission to the bar. By his admission the lawyer becomes an officer of the court. No reason can be adduced why it is not equally practicable to examine an applicant for the official position of a law clerk in the department of law, by appointment to which a person becomes a quasi advising law officer of the public, and on salary. As long experience has shown the practicability of examination in one case, it would seem equally practicable in the other. In construing the act of 1883, it should be interpreted as if the civil service section of the constitution were added as a proviso, viz. that whenever it is practicable to ascertain merit and fitness for appointment or promotion by examination, competitive or otherwise, there is no power to appoint to such positions without examination. The second section of the act of 1883 uses the word "practical" in connection with noncompetitive examinations when competition may not be found practical, and the words "so far as practicable" are used in the sixth and seventh sections, in specifying the duty of the governor to arrange in classes all subordinate places in the public service of the state, and the same words in section 8, "so far as practicable," in connection with similar duties of the mayor. It may be presumed that the convention found in

43 N.Y.S.—66

this act the value and force of the words "so far as practicable," twice used by it in the civil service section; and this is an additional reason for believing that there was no intention on the part of the · convention to declare that the act of 1883 was repugnant to the civil service section of the constitution, and thereby to abrogate it. There can be no doubt that although the act of 1883 intrusted to the governor and the mayors the duties of classification, so as to secure appointments to the civil service without examination, their action is subject to review by the courts. Nor can it be doubted that under the new constitution the courts have similar power to review the action of the governor and of the mayor, and also any act of the legislature in respect of appointments without examination. If the power of classification thus exercised constitutes a violation of the plain provisions of the constitution, and is hostile to the "newly-imbedded" civil service provisions of the constitution, it can be reviewed by the courts. But it is not necessary, nor is it intended, to pass upon that question. It is sufficient for the purposes of this appeal to say that the decision of the learned justice at special term that "it is practicable to ascertain, by competitive examination, the merit and fitness of a person to be appointed to each of the positions filled by the several defendants," is justified and sustained by all the evidence in the case, and the decision of that question of fact will not be disturbed on this appeal. Nor can I see that any of the positions in question involve such relations of personal confidence, by reason of peculiar duties or any personal liability on the part of superior officers, as justify the filling of the offices without competitive examination,—a subject referred to in the opinion of Judge Bartlett in the Keymer Case, supra. The affirmative character of the civil service section of the constitution, requiring appointments to the civil service to be made after competitive examinations, so far as it is practicable that such appointments can be made with such examination, controls us in the decision of this appeal; and, as the court below decided that such examinations were practicable, it follows that the appointments in question were against the plain provision of the constitution. I cannot therefore escape the conclusion that these appointments were illegal.

The answer alleged that Perry was not occupying the office of assistant corporation counsel in the department of law, but was a law clerk in that department. A similar allegation was made in the case of Newland,—that he was not occupying the position of clerk to commissioner in the department of city works, but was stamp clerk in the water bureau of that department. On the trial, testimony was offered to show that Perry and Newland were not holding the offices set out in the complaint, but were holding other offices, as above stated; and objection was made to the evidence as not being within the allegations of the complaint, but the objection was overruled. No amendment was made to the complaint, but the judgment includes these defendants, and describes them as holding the latter offices. As this is an equitable action, we do not see any error in the judgment in this respect.

One exception requires consideration, as it involves a principle upon which the learned counsel for the defendants based an earnest argument, that some of the defendant officials occupied positions involving confidential relations with superiors, and that such positions fell within a distinction of the constitution which, counsel argued, was indicated by the use of the words "so far as practicable," and that it was evident that, when the framers of the constitution used these words, they used them not without reason. But, even assuming that confidential positions were within the thought of the members of the convention, it does not follow that every position having such relation is to be filled without examination, competitive or otherwise. The theory of the civil service is that all appointments shall be made after examination, competitive or otherwise, whenever it is practicable, and we have concluded that examination was practicable in all the cases stated in the judgment.

There are many exceptions to the admission of evidence, but, as they do not influence the general result of the trial, they are not sustained.

The judgment should be affirmed, without costs.

PER CURIAM. In addition to the discussion of this case by the Presiding Justice, with whose opinion the other members of the court agree generally, we think it wise to state the particular propositions on which we base our decision.

1. We think that the provisions of section 9 of article 5 of the constitution, relative to the civil service, are self-executing. It must be remembered that this is not a provision intended to impose on the various officers of the state the duty of making appointments and promotions in the civil service. As far as such duty is concerned, no branch of the government of this state can be justly termed "derelict" for failing to make a sufficient number of appointments in the public service. The section is simply a limitation upon the method in which such appointments or promotions shall be made. "Any constitutional provision is self-executing to this extent: that everything done in violation of it is void." Cooley, Const. Lim. 99; Brien v. Williamson, 7 How. (Miss.) 14. This principle was, in our opinion, necessarily decided in the case of People v. Roberts, 148 N. Y. 360, 42 N. E. 1082, where Judge O'Brien said:

"If the legislature should repeal all the statutes and regulations on the subject of appointments in the civil service, the mandate of the constitution would still remain, and would so far execute itself as to require the courts, in a proper case, to pronounce appointments made without compliance with its regulations illegal."

If the decision of the court of appeals in that case did not proceed on this theory, it would be difficult, indeed, to answer the arguments of the dissenting opinion of Judge Martin. The power to legislate rests in the legislature, and this power necessarily carries with it the right, not only to enact laws, but to change, modify, and repeal the same. The civil service statutes furnish no exception to this rule. There exists no power in the courts or else-

where to compel the legislature to enact laws to provide for the enforcement of this section of the constitution. Neither is there any power residing in the courts or any restriction in the constitution to prevent the repeal by the legislature of all statutes relating to the civil service of the state. This power belongs to that class of powers which is required to exist as essential to the well-being of government, and which must be vested in some body not subject to any other authority which may restrain or enforce its exercise within prescribed limits. The body vested with such power in this state is the legislature, and for its exercise the people must depend upon the patriotism, good sense, and sound judgment of that body. But this section of the constitution is not made dependent upon the action or nonaction of the legislative body, for, as we have seen, and as the court of appeals has held, these provisions of the constitution execute themselves. To enforce the civil service section of the constitution, legislative aid is useful, but not indispensable.

2. As asserted in the Roberts Case, and also in other cases which have arisen on appointments in the civil service, the constitution was enacted in contemplation of the then-existing civil service statutes; but it does not follow that those statutes, in all their provisions, are conclusive as to the method in which appointments or promotions in the civil service are to be made. So far as, under those statutes, the classification of appointments to office was discretionary, the provisions of the constitution have superseded the statutes, and require that all appointments shall be made by competitive examination so far as practicable. Nor, in our judgment, did the fact that by those statutes the assignment of appointees to various classes was imposed on the governor and the mayors of cities constitute those officers the final arbiters of the question whether in any particular case an examination or competitive examination was practicable or not. The legislature could doubtless change the statute in this respect, and impose the duty of classification upon other officers. Though the duty is undoubtedly an administrative one, if the action of the administrative officer comes in conflict with the provision of the constitution, the courts, when the question is brought before them, must hold such action void, as in the case of any other unlawful act. We claim no power to review the administrative action of officers under the civil service laws, except so far as to determine whether such action is in conflict with the constitution. In Re Keymer, 89 Hun, 292; 35 N. Y. Supp. 161, and 148 N. Y. 219, 42 N. E. 667, an act of the legislature declared that, as to veterans, competitive examinations for positions, where the compensation did not exceed four dollars a day, should not be deemed practicable. It was held that this statute was unconstitutional and void; that the arbitrary declaration of the legislature that examination was not practicable did not establish the fact. If it be not within the power of the legislature to determine on insufficient grounds that examinations are impracticable, we cannot see that greater weight or force can be given to the action of administrative officers. This question is

analogous to the one presented in Miller v. City of Amsterdam, 149 N. Y. 288, 43 N. E. 632, and Sharp v. Speir, 4 Hill, 76.

3. When the particular character and functions of an office or position are ascertained, the question whether competitive examination for appointment to that place is practicable or not is a question determinable by the court, as matter of law, by the exercise of its judgment, and in the light not only of the proof, but of common knowledge, as applied to the subject-matter. The case is in principle like that of the reasonableness of rules or by-laws of corporations, which, contrary to the former doctrine, is now uniformly held to be a question of law for the court, not of fact for the jury. Vedder v. Fellows, 20 N. Y. 126; Avery v. Railroad Co., 121 N. Y. 31, 24 N. E. 20; Barker v. Railroad Co., 151 N. Y. 237, 45 N. E. 550. In this view there can arise no contrariety of determinations in different suits, as suggested by the appellants.

4. The question whether examination is practicable being one determined by the exercise of judgment, and, necessarily, judgment being exercised in the first instance by administrative officers, we think the presumption should obtain that public officers have done their duty, and that the burden is thrown upon whoever assails it to prove affirmatively that the action of the public officers has been illegal. Therefore, if the case presented is fairly debatable, and one as to which, in the honest exercise of judgment, men may reasonably differ, we think the court should not reverse the determination of the public officers. But the difference of judgment must be, not as to the advantage or disadvantage of the civil service scheme generally, because the constitution has settled that question, but only as to whether the particular appointment can properly be considered as subject to a competitive examination; and it must always be borne in mind that, under the constitution, competitive examination is the rule, and "pass" examination and exemption from examination the exceptions.

5. We are of opinion that the cases of none of these appointees fall within the debatable class, but were plainly susceptible of being filled by competitive examination. As to one of them it is proper we should make some qualification. That is the position of warrant clerk to the comptroller. The duty of this officer is to present warrants to the comptroller for signature. It is possible that even a careful officer might be betrayed, by the fault of his clerk, into signing an improper warrant or a warrant for an improper amount. If there were a clerk whose principal duty it was to compare the warrants with the vouchers, and guard the comptroller against falling, either by accident or the fraud of his subordinates, into error, we are not prepared to say that the comptroller might not properly have the discretion as to whom he should appoint; but it appears in this case that the comptroller has appointed a large number of warrant clerks. He cannot, by dividing a duty that is confidential, and possibly exempted from examination, among many clerks, obtain exemption for all, and thus evade compliance with the constitution and the civil service statutes.