*Statute of 1885 authorizing the laying of railroad tracks, by a corporation authorized
by acts of 1867 and 1879 to build a bridge, after a forfeiture of the franchise to build
the bridge — condition of forfeiture in an original act applied to a violation of the
provisions of an amendatory act.*

In proceedings to condemn and determine the compensation to be made to the city
of New York for a portion of Blackwell's Island for the purpose of the construc-
tion of a proposed bridge over the East river, from the city of New York to
Long Island, by the New York and Long Island Bridge Company, it appeared
that the petitioner was incorporated under chapter 395 of 1867, and thereby
authorized to construct a bridge, and thereafter, by chapter 392 of 1885, was
authorized to construct a railway.

At the time the act of 1885 was passed the petitioner's charter had been forfeited
by its failure to comply with chapter 426 of 1879 (amending the act of 1867),
which provided that the construction of the bridge should be commenced,
"under contract for the entire structure, within two years" from May 30, 1879,
before which time nothing was, in fact, done by the petitioner towards such con-
struction. By the original act of 1867 the penalty for a non-compliance there-
with was declared to be that "this act, and all rights and privileges granted
hereby, shall be null and void."

*Held,* that the condition contained in the original act of 1867 extended and attached
itself to the case of a non-compliance with the act of 1879 enlarging or extending
the term of the first-mentioned act.

That while the legislature had power to waive the forfeiture, it had not the power,
under the guise of this waiver, and under the semblance of reviving the forfeited
charter, to confer distinctly new rights never before thought of, namely, the right
to complete the bridge for railway travel.

That the conferring of such new rights was an evasion of the provisions of
section 18 of article 3 of the Constitution of the State of New York, to the effect
that the legislature shall not pass a private or local bill granting to any corpora-
tion, association or individual the right to lay down railroad tracks, nor providing
for building bridges, and chartering companies for such purpose.

That the right conferred by the act of 1885 to build the bridge in question for
railway travel, plainly implied a grant of the right to lay down railroad tracks
and was thus in violation of the constitutional prohibition.

APPEAL from an order, entered in the office of the clerk of the
county of New York, March 25, 1889, denying the petitioner's
application for the appointment of commissioners to ascertain and
appraise the compensation to be made to the city of New York
for so much of Blackwell's Island as may be required by the New
York and Long Island Bridge Company, for the purpose of con-

structing and operating the proposed bridge over the East river, from the city of New York to Long Island.

*Francis M. Scott,* for the petitioner, appellant.

*David J. Dean,* for the City of New York, respondent.

BARRETT, J.:

In denying the petitioner's application at Special Term, Presiding Justice VAN BRUNT * filed a careful opinion which, in my judgment,

---

* Application upon the part of the New York and Long Island Bridge Company to acquire certain lands belonging to the city of New York.

VAN BRUNT, P. J. Various grounds of objection were raised by the counsel for the city upon the argument of the application of the New York and Long Island Bridge Company.

In view of the conclusion to which I have arrived, in reference to one of the points raised by the counsel for the city, it is not necessary that any other objections should be considered.

It is urged that by section 3 of chapter 392 of the Laws of 1885, the authority to construct a railway is conferred in violation of the provisions of section 18 of article 3 of the Constitution of the State of New York. The provisions of the Constitution are that the legislature shall not pass a private or local bill granting to any corporation, association or individual the right to lay down railroad tracks, nor providing for building bridges and chartering companies for such purpose, except on the Hudson, below Waterford, and on the East river or other waters forming a part of the boundaries of the State.

The answer to the objection which is offered by the petitioners is that the clause of the Constitution claimed to be violated is that which forbids the legislature, from passing any private or local bill granting corporations, associations or indi-viduals the right to lay down railway tracks, but that the same section expressly confers the right to build bridges over the East river, and the right to so construct the bridge as to permit the running of a railway over it is a necessary incident to such bridge; and that, at most, all the statute amounts to is to permit the company to construct the bridge, and, after it is built, some one who is authorized to do so may lay down railway tracks upon it; and that if this company has not the right to do so it can be acquired by some company having unquestioned right.

And it is also urged that if these provisions were unconstitutional the petitioners have still the unquestioned right to build a bridge for foot and carriage traffic; and that the only question now before the court is whether the company has the right to build the bridge at all; that the uses to which it is to be put, when constructed, are not before the court at present, and that it will be time enough to discuss them when the question is properly presented.

We think that the validity of the legislation under which the petitioners propose to act is clearly before the court upon the present application, and if they have no standing, because of the invalidity of such legislation, clearly they have no power to initiate proceedings by which the right of eminent domain is to be exercised. It is not the case, therefore, of a property owner raising an objection before he is

demonstrates the unconstitutionality of the act (Laws of 1885, chap. 392) under which these proceedings are instituted. But little need be added to this opinion. The original act under which the petitioner was incorporated (Laws of 1867, chap. 395) conferred upon it no authority to construct a bridge for railway travel. That act plainly contemplates an ordinary bridge for the passage of "persons, animals, carriages and vehicles." In section 6 of the act, provision is made for the usual toll-gates and rates of toll. In sec-

---

hurt, as is claimed by the counsel for the petitioner; but it is the case of a property owner challenging the right of a corporation to deprive him — because of legislation — of property of which he is the owner.

The present rights of the petitioners are conferred by the various acts of the legislature, the first of which appears to be chapter 395 of the Laws of 1867, incorporating the New York and Long Island Bridge Company. There is a provision in that act that the bridge shall be commenced within two years from its passage, and shall be continued, without unreasonable delay, until it is completed, or the act and the rights and privileges granted thereby shall be null and void. In the year 1871 additional powers were conferred upon the New York and Long Island Bridge Company, and the time for the completion of the bridge was extended to the 1st of June, 1879, the work to be commenced within two years from the passage of the act. In 1879, the time for the construction of the bridge was enlarged to the 1st day of June, 1885.

In none of these acts thus far does any power to build a bridge for railway travel seem to have been conferred, nor in its character for carriage in any way specified.

In 1885, by chapter 392, the period for the commencement of the actual construction of the bridge was extended to the 30th of May, 1888, and it was provided that said bridge should be built for railway, foot and carriage travel. This it would seem is a clear attempt to confer, by means of an amendment of the charter of the corporation, rights which had not previously existed, viz., that the bridge should be built for the purposes of railroad travel.

Prior to this time there was no designation as to the kind of bridge to be built, and were it not for the inhibition contained in the Constitution in respect to the granting of rights to lay down railway tracks to any corporations, associations or individuals, there seems to be no reason why the bridge in question might not have been built capable of accommodating railway travel.

The claim made upon the part of the petitioners that the words in question did not confer any right to lay down railroad tracks, but only to build a bridge suitable for railway travel cannot prevail, because if the bridge is to be suitable for railway travel it must have the appliances which are necessary for the conducting of a railroad. But I imagine that if these petitioners were defending their right to maintain the railway upon this bridge they could shelter themselves with perfect safety under the grant contained in this act. Were it not for the prohibition contained in the Constitution, we would have a different argument presented, and one to which there does not seem to be any answer, namely, that the making of

tion 7 the purchase of the bridge by the counties of New York and Queens is authorized "provided the said bridge be made free to be passed by travelers and vehicles *without toll* or other charges." There is not a suggestion of any other than the ordinary and well-understood use. Railroad bridges, or bridges for railway purposes, were entirely different structures, created for different purposes, governed by different rules, and requiring, as a prerequisite to their construction, legislative authority. A bridge of the latter character

provision for railroad travel which they were required to do, implied the power to do everything necessary to carry on the railroad business.

But it is said that the city is crying before it is hurt, because they have not built any bridge and have not attempted to lay any rails, and, as a consequence, if they have not the power to lay rails there, they can be prevented and nobody will be hurt.

The difficulty with this proposition is that the requirements of the act are that the bridge shall be of a certain character, and it is to be presumed that the extended time granted by this act for the consummation of the construction of the bridge and the many other concessions were induced by the fact that the bridge was to be of a particular character; that additional obligations were placed upon this corporation by the legislature as a condition of these concessions. Now, it cannot be that when it turns out that the corporation cannot comply with the conditions upon which the extension was granted, that they can claim the benefit of the extension. It will not do, therefore, to say that the corporation has the power to build the bridge for carriage and foot travel and abandon the railroad project, and thereby bring themselves within the requirements of the law.

The provision of the law is that they build a bridge for railroad travel, and if the legislature had no power to make such a concession and exact such a requirement, then the extension dependent upon these changes necessarily falls with the want of power of the legislature to put upon these petitioners these additional requirements which were the consideration for the concession in respect to time.

It is undoubtedly true that where the parts of an act are independent and not related one to the other, and where some are unconstitutional and others constitutional, the unconstitutional ones may fall, and the constitutional provisions still remain. But in the case at bar it is a single piece of legislation relating to a single subject. The concessions and the obligations are mutual; and when you take away the right to fulfill one of the obligations the consideration for the concessions necessarily falls. The provision of the act is that such bridge shall be built for railroad travel, and, therefore, if the corporation have no power to build the bridge for railroad travel, they are unable to comply with the conditions upon which their right of construction depends.

It seems to me, therefore, that for the reasons stated that the objection is well taken, and the application for the appointment of commissioners should be denied, with costs.

Filed *March* 7, 1889.

was never contemplated by this act, nor, indeed, by any of the numerous amendments thereto, down to that of 1885. The appellant misapprehends the language of the presiding justice in this regard. He nowhere intimates that the act of 1867 authorized the building of a bridge for railway travel. On the contrary, referring to all the acts passed prior to that of 1885, he declares that in none of them does any power to build a bridge for railway travel seem to have been conferred, He does say that but for the constitutional inhibition of 1875, there seems to be no reason why the bridge might not have been built, capable of accommodating railway travel. Clearly, what he means by this observation is, that but for the constitutional inhibition, the act of 1885 would be valid and the bridge might then have been built for railway travel under its express authority.

Such is the view I take of his opinion, and this view is borne out by these various statutes. The first attempt to bring in the railway element is in this act of 1885. When it was passed the petitioner's charter had been forfeited by the failure to comply with the act of 1879 (chap. 426). This latter act was a legislative waiver of previous forfeitures, but it provided that the construction of the bridge should be commenced "under contract for the entire structure within two years" from the 30th of May, 1879. (Sec 1.) Nothing was done by the petitioner towards the commencement of construction within the time so limited, and, consequently, the forfeiture declared by the original act (§ 12 of chap. 395, Laws 1867) became operative. (*Matter of Brooklyn, W. and N. R. R. Co.,* 72 N. Y., 245.) This case distinctly holds that the penalty for non-compliance with such a condition, declared in the original act, attaches to non-compliance with the act enlarging or extending the term. The penalty for non-compliance, specified in the act of 1867, is that "this act and all rights and privileges granted hereby shall be null and void."

Now, while the legislature in 1885 had power to waive the forfeiture of May, 1881, just as it had waived previous forfeitures, it had not the power, under the guise of this waiver and under the semblance of reviving the forfeited charter, to confer a distinctly new right never before thought of, namely, the right to build the bridge for railway travel. It is entirely apparent that this was an

evasion of the Constitution. The act, with this new right speciously embodied in it, was evidently applied for and obtained because of a complete change in the petitioner's original scheme.

The proofs show that the idea of a bridge for the passage of persons, animals, carriages and vehicles, as contemplated by the original act, had been entirely abandoned. The bridge and its approaches are now designed for a double track-railway. It is simply a railway viaduct upon which both through and local trains are to be run. There are to be no carriage-ways, and even the " limited " foot-way is to be mostly for bridge service. I do not doubt that the power of the legislature to grant special charters for the building of bridges over the East river is limited by the constitutional prohibition against the passage of a private or local bill granting to any corporation, association or individual the right to lay down railroad tracks. The right conferred by the act of 1885 to build the bridge in question for railway travel plainly implies a grant of the right to lay down railroad tracks and thus runs counter to the constitutional prohibition. The presiding justice's reasoning on this head is quite satisfactory and needs no amplification. The same observation applies to his treatment of the petitioner's effort to sever this grant from what would otherwise have been a valid waiver of the existing forfeiture. The unauthorized grant was so interwoven with the other provisions and purposes of the act that it cannot be severed therefrom and rejected, leaving the revival of the old charter to stand. (Cooley on Const. Limitations, 213; *In re N. Y. Dist. Ry. Co.*, 107 N. Y., 54, 55; *Allen* v. *Louisiana*, 103 U. S., 80.)

There is still another and an equally fatal difficulty in the petitioner's way, and that is that it has again forfeited all its rights and privileges. I mean the very rights and privileges attempted to be conferred by the act of 1885. Section 3 of the act provides that the actual construction of the bridge shall be commenced on or before the 30th day of May, 1888. The evidence is clear and conclusive that this provision was not complied with. The petitioner's own proofs fail to show anything more than preparation prior to the 30th of May, 1888, while the affidavits read on behalf of the city give the 7th of June, 1888, as the precise date when the first cargo of stone was placed upon Blackwell's Island by any representative of the petitioner. It follows, on the authority of the case

previously cited (72 N. Y., 245), that upon the failure of the peti
tioner to commence the actual construction of the bridge within the
time limited by the act of 1885, the penalty attached to the original
condition (declared in the act of 1867) became operative and all
rights and priviliges granted to the relator became null and void.

It is not necessary, therefore, to consider the question whether the
legislature intended to appropriate any part of Blackwell's Island
to the use of this bridge company, nor to consider any of the other
questions which were so thoroughly discussed.

The order appealed from for the reasons assigned, as well as those
furnished by the presiding justice, should be affirmed. with costs.

DANIELS, J., concurred.

Order affirmed, with costs.