In the Matter of the Application of THE NEW YORK AND
LONG ISLAND BRIDGE COMPANY, Respondent, *v.* LENOX
SMITH, Appellant, Impleaded with PATRICK SKELLY.

1. CORPORATIONS — CHARTER — FORFEITURE CLAUSE.    The question
whether a forfeiture clause in an act of incorporation is or is not self-
executing depends wholly upon the language employed by the legislature.

2. CORPORATIONS — FORFEITURE OF EXISTENCE.    The legislature has
undoubted power to provide in an act of incorporation that corporate
existence shall cease by the mere failure of the corporation to perform
certain acts imposed by its charter.

3. CORPORATIONS — FORFEITURE OF EXISTENCE.    It requires strong
and unmistakable language to authorize the courts to hold that the legis-
lature intended that a forfeiture of corporate existence should be effected
without judicial proceedings on the intervention of the attorney-general.

4. CORPORATIONS — CHARTER — FORFEITURE CLAUSE — "NULL AND
VOID."    The words "all rights and privileges granted hereby shall be
null and void" do not render a forfeiture clause in a charter self-execut-
ing; but the meaning of "null and void" in such a connection is that the
corporate existence shall be "voidable," *i. e.*, that in case of default the
corporation may be dissolved through appropriate legal proceedings by
the attorney-general.

5. CHARTER OF BRIDGE COMPANY — FORFEITURE CLAUSE — DEFAULT.
The forfeiture clause in the charter of the New York and Long Island
Bridge Company (Laws of 1867, chap. 395, § 12), which provides that the
bridge authorized to be constructed shall be commenced within two years
from the passage of the act, or "this act and all rights and privileges
granted hereby shall be null and void," is not self-executing; and, hence,
the company did not, by failing to commence work within the prescribed
two years, cease to exist on the expiration of that period.

6. STATUTES — CONSTITUTIONALITY — EXPRESSION OF SUBJECT IN
TITLE.    In submitting an amendatory act to the test of the constitu-
tional provision (Art. 3, § 16) that "no private or local bill * * *
shall embrace more than one subject, and that shall be expressed in the
title," the inquiry must be based upon the title of the original act.

7. STATUTES — CONSTITUTIONALITY — CONSTRUCTION.    Where there is
room for two constructions of a statute, both equally obvious and equally
reasonable, it is the duty of the court to adopt the construction which,
without doing violence to the fair meaning of the words used, brings the
statute into harmony with the Constitution.

8. STATUTES — CONSTITUTIONALITY — RAILROAD.    A clause in a stat-
ute, enacting that a bridge shall be so constructed as to provide for "the
accommodation and *transportation of* passengers and *vehicles of every*

*description,*" is not to be construed as authorizing the laying of railroad tracks when the effect of such construction would be to render the statute obnoxious to the constitutional inhibition (Art. 3, § 18) against the passage of any private or local bill granting the right to lay down railroad tracks.

9. STATUTES — CONSTITUTIONALITY — SEPARATION OF PROVISIONS. Where an act of the legislature deals with a subject not expressed in its title, and such void provisions are separable from those that are lawful, and that which remains is capable of being executed, and stands complete in itself, it may be treated as constitutional.

10. LAWS OF 1892, CHAP. 411 — CONSTITUTIONALITY — SEPARATION OF PROVISIONS. Chapter 411, Laws of 1892, entitled "An act to further amend chapter 395 of the Laws of 1867, entitled 'An act to incorporate the New York and Long Island Bridge Company, for the purpose of constructing and maintaining a bridge over the East river between the city of New York and Long Island,'" is, as to certain separable provisions, void by reason of violation of the provision of the Constitution (Art. 3, § 16) requiring the subject of a private or local bill to be expressed in its title, and is, as to its other provisions, constitutional and effective.

· 11. TWO-THIRDS BILL — EVIDENCE OF PASSAGE. Where the fact of the due passage of an act for which the Constitution (1846, art. 1, § 9; 1894, art. 3, § 20) requires the assent of two-thirds of the members elected to each branch of the legislature, is in question, and the Session Laws show the act to have been passed, three-fifths being present, and the certificates of the presiding officers of both houses attached to the original bill show only the fact that three-fifths were present, recourse may be had to the journals of the two houses.

12. RAPID TRANSIT ACT. Section 38 of the Rapid Transit Act (Laws of 1892, chap. 102) does not apply to the New York and Long Island Bridge Company in erecting such a bridge and approaches as are permitted by its restricted powers.

13. ACT AUTHORIZING RAILWAYS UPON BRIDGES. Chapter 225, Laws of 1893, authorizing any bridge company which maintains a bridge over a river connecting any city in the state, containing more than one million inhabitants, with any other city in the state, to lay tracks and operate a railway upon its bridge, applies to the New York and Long Island Bridge Company.

14. RIGHT TO OPERATE A RAILROAD. Congress has no power to confer a right upon the New York and Long Island Bridge Company to operate a railway upon its bridge; the right of that company to operate a railway must, therefore, be found in chapter 225, Laws of 1893, and cannot be based upon chapter 334, U. S. Statutes at Large of 1886–1887.

15. NEW YORK AND LONG ISLAND BRIDGE COMPANY. Under the lawful legislation on the subject, the New York and Long Island Bridge Company is an existing corporation, authorized to build a bridge over the

East river, with a proper approach on each side from the surface to reach the level of the bridge, which approach on the New York side may run eastwardly from Third avenue.

Reported below, 90 Hun, 312.

(Argued January 20, 1896; decided February 25, 1896.)

APPEAL by the defendant Lenox Smith in condemnation proceedings, from an order of the General Term in the first judicial department, made November 15, 1895, affirming an order appointing commissioners of appraisal, entered on the direction of the court upon the decision of a referee, in favor of the petitioner and against the defendant, after a trial of the issues.

This special proceeding was begun on March 18, 1895; the defendant Smith answered, and the defendant Skelly neither answered nor appeared at the trial.

The premises belonging to defendant Lenox Smith, and for the appropriation of which this proceeding was brought, are situated on the easterly side of Third avenue, in the city of New York, beginning fifty feet north of Sixty-fourth street, and having a frontage of seventy-five feet on Third avenue, and a depth of 105 feet.

The "New York and Long Island Bridge Company" was incorporated by chapter 395, Laws of 1867, entitled "An act to incorporate the 'New York and Long Island Bridge Company' for the purpose of constructing and maintaining a bridge over the East river between the city of New York and Long Island."

This act was amended by the following acts, viz.: Chapter 437, Laws of 1871; chapter 426, Laws of 1879; chapter 392, Laws of 1885; chapter 411, Laws of 1892, and chapter 212, Laws of 1894.

Further facts are stated in the opinion.

*De Lancey Nicoll* for appellant. The petitioner cannot maintain this proceeding if it has lost its rights and franchises, nor unless it is a *de jure* as well as a *de facto* corporation. (*In re B., W. & N. R. Co.*, 72 N. Y. 245; *B. S. T. Co.* v.

*City of Brooklyn*, 78 N. Y. 524; Laws of 1867, chap. 775, § 1; Laws of 1894, chap. 575; Laws of 1873, chap. 61, § 4; *In re B., W. & N. R. Co.*, 75 N. Y. 335; 81 N. Y. 71; *N. Y. C. Co.* v. *Mayor, etc.*, 104 N. Y. 43; *In re K. C. E. R. R. Co.*, 105 N. Y. 119; *Day* v. *O. & L. C. R. R. Co.*, 107 N. Y. 139; *Farnham* v. *Benedict*, 107 N. Y. 171; *In re B. E. R. R. Co.*, 125 N. Y. 441; Laws of 1867, chap. 395, § 12; *In re N. Y. & L. I. B. Co.*, 54 Hun, 406.) Laws of 1892, chap. 411, violates the Constitution because it attempts to grant to the petitioner the right to lay down railroad tracks. (*Stuart* v. *Palmer*, 74 N. Y. 183; *Coxe* v. *State*, 144 N. Y. 396; 54 Hun, 401.) The provision of section 18 of article 3 of the Constitution, which forbids the legislature to pass a private or local bill, providing for building bridges and chartering companies for such purposes, except on the Hudson river below Waterford, and on the East river, or over the waters forming a part of the boundaries of the state, does not so abridge the scope of the provision against granting to a corporation the right to lay down railroad tracks, as to authorize the petitioner to lay such tracks on its bridge structure and approaches. (*In re N. Y. E. R. R. Co.*, 70 N. Y. 349; *People ex rel.* v. *Loew*, 102 N. Y. 471; Laws of 1893, chap. 225, § 1; 54 Hun, 401.) The act of 1892 violates section 16 of article 3 of the Constitution, in that its subject is not expressed in its title. (*People ex rel.* v. *Kelly*, 76 N. Y. 475, 486; *People* v. *Bd. Suprs. Chautauqua Co.*, 43 N. Y. 10; *People ex rel.* v. *Allen*, 42 N. Y. 404; *In re Paul*, 94 N. Y. 497; *Huber* v. *People*, 49 N. Y. 132; *Coxe* v. *State*, 144 N. Y. 396; *In re Mayer*, 50 N. Y. 504; *Neuendorff* v. *Duryea*, 69 N. Y. 557; *In re Blodgett*, 89 N. Y. 392; Laws of 1892, chap. 411; *In re Mayor, etc.*, 99 N. Y. 569; *Astor* v. *A. R. Co.*, 113 N. Y. 93; *Johnston* v. *Spicer*, 107 N. Y. 185; *Mayor* v. *M. R. Co.*, 143 N. Y. 1; *People* v. *O'Brien*, 38 N. Y. 193; *Gaskin* v. *Meek*, 42 N. Y. 186; *Stuart* v. *Palmer*, 74 N. Y. 183; *United States* v. *Reese*, 92 U. S. 214; *Allen* v. *Louisiana*, 103 U. S. 80; *Poindexter* v. *Greenhow*, 114 U. S. 270; *Wynehamer* v. *People*, 113 N. Y. 378; *Pollock* v. *F. L. &*

*T. Co.*, 158 U. S. 601; *Sprague* v. *Thompson*, 118 U. S. 90, 95; *Warren* v. *Charlestown*, 2 Gray, 84; *Meshmeier* v. *State*, 11 Ind. 482, 485; *C. C. Branch* v. *Atchison Co.*, 28 Kans. 453, 457; Cooley's Const. Lim. 178, 179.) The act of 1892 is obnoxious to section 9 of article 1 of the Constitution. (Laws of 1847, chap. 253; 1 R. S. 156; *Leonard* v. *Grant*, 5 Fed. Rep. 11; *Hunt* v. *Van Alstyne*, 25 Wend. 605; *Warner* v. *Beers*, 23 Wend. 103; *People* v. *Purdy*, 1 Hill, 31, 35; 4 Hill, 384, 390; *People* v. *Devlin*, 33 N. Y. 269; *Langdon* v. *Mayor, etc.*, 93 N. Y. 129; *Coxe* v. *State*, 144 N. Y. 405; *Smith* v. *Levinus*, 8 N. Y. 472; *Dermott* v. *State*, 99 N. Y. 101; *Smith* v. *City of Rochester*, 92 N. Y. 463; *I. C. R. R. Co.* v. *Illinois*, 146 U. S. 387; *Shively* v. *Bowlby*, 152 U. S. 1, 57; *Hardin* v. *Jordan*, 140 U. S. 371, 381; *People* v. *N. Y. & S. I. F. Co.*, 68 N. Y. 71; *Williams* v. *Mayor, etc.*, 105 N. Y. 419; *Kingsland* v. *Mayor, etc.*, 110 N. Y. 569; *In re Mayor, etc.*, 135 N. Y. 254; Laws of 1871, chap. 574, § 67; Laws of 1882, chap. 410, § 720; *Bedlow* v. *N. Y. F. D. D. Co.*, 112 N. Y. 263; *People* v. *Bd. Suprs. Chautauqua Co.*, 43 N. Y. 10; *Huber* v. *People*, 49 N. Y. 132, 135; *People ex rel.* v. *Comrs.*, 54 N. Y. 276; *Kerrigan* v. *Force*, 68 N. Y. 381; *People* v. *Kelly*, 76 N. Y. 475, 486; *People* v. *Allen*, 42 N. Y. 404; *In re S. I. R. Tr. Co.*, 103 N. Y. 251.) The petitioner cannot maintain this proceeding because it has not complied with the requirements of section 38 of the Rapid Transit Act respecting consent of the local authorities. (Laws of 1892, chap. 102, § 38; Const. N. Y. art. 3, § 18.) The proofs fail to show that the petitioner commenced the construction of the bridge before March 3, 1893. (*In re Weil*, 83 N. Y. 543; *In re Blodgett*, 91 N. Y. 117.) The act of 1894 is ineffectual to waive the forfeiture. (Laws of 1894, chap. 212; *In re B., W. & N. R. Co.*, 72 N. Y. 245; 75 N. Y. 335; *In re N. Y. E. R. R. Co.*, 70 N. Y. 327.)

*Julien T. Davies* and *William J. Kelly* for respondent. The petitioner has a complete and perfect corporate existence,

and all causes of forfeiture of this franchise have been waived by the legislature. (Laws of 1892, chap. 411; Laws of 1894, chap. 212; *People* v. *Manhattan Co.*, 9 Wend. 351.) Chapter 411 of the Laws of 1892 does not give authority to the petitioner to lay down railroad tracks upon its bridge. (*G. Co. Suprs.* v. *Brogden*, 112 U. S. 268; *People ex rel.* v. *Bd. Suprs.*, 17 N. Y. 241; *People ex rel.* v. *Albertson*, 55 N. Y. 54; *In re G. E. R. Co.*, 70 N. Y. 367; *Hooper* v. *People*, 155 U. S. 648; *People ex rel.* v. *Rice*, 135 N. Y. 483; *In re M. E. R. Co.*, 12 N. Y. Supp. 507; *In re L. I. R. R. Co.* v. *Moran*, 143 N. Y. 67; *Stockton* v. *B. & O. R. R. Co.*, 32 Fed. Rep. 13.) Chapter 411 of the Laws of 1892 does not offend section 16 of article 3 of the State Constitution. (*People ex rel.* v. *Briggs*, 50 N. Y. 553; *Mayor, etc.*, v. *M. R. Co.*, 143 N. Y. 1; *In re N. Y. E. R. R. Co.*, 70 N. Y. 327; *Ex parte Middletown*, 82 N. Y. 196; *People* v. *Kenney*, 96 N. Y. 294; *Harris* v. *Bd. Suprs.*, 16 Abb. [N. C.] 292; *In re Paul*, 94 N. Y. 507; *People* v. *Bd. Suprs.*, 43 N. Y. 10; *Town of Fishkill* v. *F. & B. P. R. Co.*, 22 Barb. 634.) Chapter 212 of the Laws of 1894 does not give to the plaintiff the right to lay down railroad tracks. (Laws of 1893, chap. 225; Laws of 1867, chap. 395, § 12; *Lessees, etc.*, v. *Blougher*, 14 Pet. 178; *Elwell* v. *Daggs*, 108 U. S. 143; *Day* v. *O. & L. C. R. R. Co.*, 107 N. Y. 139; *Pease* v. *Morrice*, 2 Ad. & El. 94; *Kearney* v. *Vaughan*, 50 Mo. 284; *Brown* v. *Brown*, 50 N. H. 552; *Inskeep* v. *Lecony*, 1 N. J. L. 111; *King* v. *Inhabitants, etc.*, 8 B. & C. 471; *Van Schaack* v. *Robins*, 36 Iowa, 201.) Chapter 392 of the Laws of 1885 does not offend against section 17 of article 3 of the State Constitution then in force. (*Ketchum* v. *City of Buffalo*, 14 N. Y. 359; *Le Couteulx* v. *City of Buffalo*, 33 N. Y. 336.) Chapter 411 of the Laws of 1892 is not unconstitutional as being in conflict with section 9 of article 1 of the State Constitution. (*In re G. E. R. Co.*, 70 N. Y. 361; *Wetmore* v. *B. G. L. Co.*, 42 N. Y. 384; Laws of 1871, chap. 574; *Saunders* v. *N. Y. C. & H. R. R. R. Co.*, 144 N. Y. 75; *Roberts* v. *N. P. R. R. Co.*, 158 U. S. 1.) The

journals of the senate and assembly are admissible in evidence to supplement the certificates attached to chapter 411 of the Laws of 1892, on file in the office of the secretary of state. (1 R. S. [8th ed.] 470, § 3; Laws of 1842, chap. 306; Laws of 1892, chap. 682, art. 2, §§ 40, 44; *People* v. *Purdy*, 2 Hill, 31; 4 Hill, 390; *People* v. *Devlin*, 33 N. Y. 284; *People ex rel.* v. *Bd. Suprs.*, 8 N. Y. 317; *Darlington* v. *Mayor, etc.*, 2 Robt. 277; 31 N. Y. 164; *In re Kingston*, 40 How. Pr. 446; *Rumsey* v. *N. Y. & N. E. R. R. Co.*, 130 N. Y. 88.) Plaintiff is empowered by the General Law, chapter 225 of the Laws of 1893, to lay down railroad tracks upon its bridge. (Laws of 1893, chap. 225.)

BARTLETT, J. The main question presented by this appeal is whether the New York and Long Island Bridge Company was, at the time this proceeding was instituted, an existing corporation duly authorized to acquire title to the land of the defendant Smith, for the purposes of constructing the bridge and its approaches.

The learned counsel for the appellant rests his attack upon the corporate existence on various distinct grounds, and a proper consideration of them involves a full examination of the legislation under which the bridge company claims the right to maintain this proceeding.

The appellant takes a preliminary point which, if sound, would require a reversal of the order appealed from, and a dismissal of this proceeding.

The act incorporating the bridge company (Chap. 395, Laws of 1867), provides in the twelfth section thereof that the bridge shall be commenced within two years from the passage of the act, and shall be continued without unreasonable delay, until it is completed, " or this act and all rights and privileges granted hereby shall be null and void."

It is the contention of appellant's counsel that this forfeiture clause is self-executing, and as it is admitted that the work was not commenced within two years from the passage of the act, the bridge company, *ipso facto*, ceased to exist.

We are referred to a large number of authorities as sustaining this position, and, among others, to several cases in this court.

It is to be observed that the question as to whether a forfeiture clause is or is not self-executing, depends wholly upon the language employed by the legislature.

Our attention is called particularly to *In re Brooklyn, Winfield & Newtown Ry. Co.* (72 N. Y. 245) and *Brooklyn Steam Transit Co.* v. *City of Brooklyn* (78 N. Y. 524).

In the first case the words of forfeiture were, " its corporate existence and powers shall cease," and this court held that upon default the corporation's existence and powers ceased, without judicial proceedings.  In the second case the words of forfeiture were, " this act and all the powers, rights and franchises herein and hereby granted shall be deemed forfeited and terminated," and this court held the clause to be self-executing, thereby recognizing the undoubted power of the legislature to provide that corporate existence shall cease by the mere fact of failure of the corporation to perform certain acts imposed by the charter.

It requires, however, strong and unmistakable language, such as each of the cases referred to presents, to authorize the court to hold that it was the intention of the legislature to dispense with judicial proceedings on the intervention of the attorney-general.

In the case at bar the words of forfeiture are, " all rights and privileges granted hereby shall be null and void."

It cannot be said that the words " shall be null and void " disclose the legislative intent to make this clause self-executing. The words " null and void," as used in this connection, clearly mean voidable.  The word " void " is often used in an unlimited sense, implying an act of no effect, a nullity *ab initio* (*Inskeep* v. *Lecony*, 1 N. J. L. 112) ; in the case at bar it was not so employed, but rather in its more limited meaning.

We think these words mean no more than if the legislature had said, in case of default the corporation " shall be dissolved."  The attorney-general was authorized to treat the

charter of the bridge company as voidable, and by appropriate legal proceedings to have terminated its corporate existence.

The Supreme Court of the United States, in passing upon the meaning of the words " void and of no effect," uses this language : " But these words are often used in statutes and legal documents,   *   *   *   in the sense of voidable merely, that is, capable of being avoided, and not as meaning that the act or transaction is absolutely a nullity, as if it never had existed, incapable of giving rise to any rights or obligations under any circumstances. (*Ewell* v. *Daggs*, 108 U. S. 148.)"

Holding, as we do, that the forfeiture clause in the act of 1867 was not self-executing, we find in the various acts amending the act of 1867 repeated waivers by the legislature of the failure of the bridge company to begin its work within two years from the passage of the act of 1867.

The act of 1871 (Chapter 437) provides that the company shall proceed within two years to construct the bridge, and must complete it before the 1st of June, 1879.

The act of 1879 (Chapter 426) provides that the bridge should be commenced within two years from the passage of the act, and be completed by the first day of June, 1885.

The act of 1885 (Chapter 392) provides that work should commence before May 30, 1888. and continue with all due diligence to completion.

The act of 1892 (Chapter 411) provides that work should begin before March 3, 1893, and be completed before the 3d day of March, 1900.

It may be well enough to state at this point that among the questions of fact passed upon by the referee in this proceeding, were these two, viz. :

Did the bridge company begin work under the act of 1885, before May 30, 1888 ?

Did it begin work under the act of 1892, before March 3, 1893 ?

The learned referee answered both of these questions in the

affirmative, and the General Term refused to disturb these findings.

We are satisfied, from an inspection of the record, that the findings are supported by evidence.

It, therefore, follows the point is not well taken that the bridge company, by reason of failure to commence work upon the bridge in due season, has ceased to be a living, existing corporation.

The next point made by the appellant brings up for consideration the most important question presented by this appeal. It is insisted that the act of 1892 (Chapter 411), under which this proceeding is instituted, violates article 3, section 16, of the Constitution, in that its subject is not expressed in its title.

The section reads as follows: "No private or local bills, which ay be passed by the Legislature, shall embrace more than one subject, and that shall be expressed in the title."

To properly deal with this point it becomes necessary to examine the act of 1867, and the various statutes amending it. In looking at the act of 1867, the first point that arrests the attention is the title, which reads: "An act to incorporate the ' New York and Long Island Bridge Company,' for the purpose of constructing and maintaining a bridge over the East river, between the city of New York and Long Island." It is under this title that all amendatory acts must be subjected to the constitutional test.

The corporation under the act of 1867 was given power to purchase, acquire and hold as much real estate as was necessary for the site of the bridge and the abutments, approaches, walls and other structures proper to the bridge, and for the opening of suitable avenues of approach.

The act further provides that the capital of the company shall be two millions of dollars, with power to increase it; it also locates the bridge in the city of New York, between Third avenue and East river, and between Fiftieth and Ninety-second streets, and to cross the East river as near opposite as practicable to Long Island, to such a point as will afford and give

reasonable grade and facilities for approaches; it also provides for condemnation proceedings, forfeiture for not commencing work, etc.

We have here a complete scheme, fully described in the title of the act, and the question is, whether it can be separated from subsequent unconstitutional amendments of the act of 1867, and allowed to stand as embodying the clear legislative intent?

The act of 1871 conferred upon the company power to acquire land under water, to receive real estate donated, etc.

The act of 1879 amended the act of 1867 by increasing height of bridge above average mean tide from one hundred and thirty-five to one hundred and fifty feet, and repealed the very salutary provision of the act of 1867 allowing the counties of New York and Queens to purchase the property of the bridge company at any time upon certain terms.

The act of 1885 amended the act of 1867 so as to allow the bridge to be built for railway, carriage and foot travel. This is the first appearance in the scheme of the power to construct a railway over this bridge. In the section amending section 10 of the act of 1867 there also appears for the first time provisions looking to a broader scheme than that contemplated in the original act. After extending time to begin the work, the amendment provides for the prosecution of the work with due diligence until the said bridge and approaches, and the necessary depot in the city of New York, "as well as all the works that the company may deem necessary to its connection with the Harlem railroad in and upon Fourth avenue, and other railroads in the city of New York and in the county of Queens, shall be completed."

We have here shadowed forth in an indirect and covert manner for the first time, a scheme which is no part of the subject expressed in the title of the act of 1867, to build a bridge over the East river, with necessary approaches, starting eastwardly from Third avenue.

In a condemnation proceeding under the act of 1885, begun in 1888, the General Term of the first department held the act

unconstitutional, in that the legislature, by a private and local bill, had granted to the corporation the right to lay down railroad tracks in violation of article 3, section 18, of the Constitution. (54 Hun, 400.)

We now come to the act of 1892, which also professes to be amendatory of the act of 1867.

It first amends section 10 of that act, and enacts that the bridge shall be so constructed as to provide for "the accommodation and transportation of passengers. and vehicles of every description, for the transportation of freight, and for such other purposes and in such manner as shall, in the judgment of the said company, seem most desirable."

Before passing to the other provisions of the act, we will consider this clause. The appellant urges that the words, "and vehicles of every description," are broad enough to authorize the company to lay railroad tracks upon its bridge structure, and, therefore, the entire act is unconstitutional.

We are unable to agree with the reasoning of the learned counsel for the appellant on this point, and are of opinion that these words can be and should be given a narrower construction, excluding the right to lay down railroad tracks. '

In *Grenada County Supervisors* v. *Brogden* (112 U. S. 268) the Supreme Court states with clearness the rule that should govern in construing the clause under consideration, viz. :

"Where there is room for two constructions of a statute, both equally obvious and equally reasonable, the court must, in deference to the legislature of the state, assume that it did not overlook the provisions of the Constitution, and designed the act to take effect. Our duty, therefore, is to adopt the construction which, without doing violence to the fair meaning of the words used, brings the statute into. harmony with the provisions of the Constitution."

This rule of construction has been frequently applied in this court. (*People ex rel. Burrows* v. *Supervisors*, 17 N. Y. 241; *People ex rel. Bolton* v. *Albertson*, 55 N. Y. 54; *Matter of Gilbert Elevated Railway. Company*, 70 N. Y. 367.) .

We come, then, to the further material provisions in the act of 1892.

It amends section 10 of the act of 1867 in several respects; it provides that the construction of the bridge shall conform to the plans heretofore approved by the secretary of war; it also modifies the location of the bridge, by providing that it shall commence in the city of New York, east of Park avenue, at or within a mile of the Grand Central Depot, for the southern arm or approach, "and for the northern arm, either north or south of the Harlem river with full authority to the said company to locate and build any other bridges necessary to such approach or approaches;" it also confers upon the company authority to construct such "structures as the said company may deem necessary to provide for the connection of said bridge with the Grand Central Depot and the yards of the New York and Harlem railroad, and any other railroads in, over or under the said city of New York, whether steam, elevated, cable or electric."

After the act of 1892 completes its amendments of the act of 1867 it sets forth considerable new matter.

Section 4, dealing with the subject of taxation, provides that where the earnings exceed a certain amount, a tax shall be paid into the "treasuries of the respective cities, in which any portion of any bridge or bridges, or any approach thereto, or any elevated or other railway which may be owned, controlled, managed or operated by said company shall be located."

This same, or very similar phraseology, is repeated several times in section 4.

Sections 5 and 6 of this act contain most extraordinary provisions, when we bear in mind the title of the act of 1867.

The corporation is empowered to merge or consolidate with any other corporation; it is authorized to lease its bridge or any part thereof to any corporation; in case of consolidation with any other corporation all its powers are vested in the new corporation; it is also made lawful for any other corporation to lend its credit to the corporation created, and any corpora-

tion or municipality in the state of New York, except when prohibited ·by the· Constitution, may subscribe· to or become the owner of the stock, bonds or other securities thereof, in like manner and with like rights as individuals.

It is further provided that the approaches to the bridge from the central termination in New York may be extended through private property, and along, over, through and across First and Second avenues for the southern arm ; provision is also made for connection with existing railroads north of the Harlem river.

We then find, at the close of section 6, the final drag net clause, that the company shall have the power to construct "all necessary approaches other than those hereinbefore specified, and all necessary connections between the said bridge and approaches, and any railroad or railroads in the cities of New York, Long Island City or Brooklyn, so as to enable passengers and cargo to be transferred rapidly and conveniently to and from the same."

The learned counsel for the respondent seemed to concede on the argument that the provisions of the act of 1892, relative to the northern arm of the bridge, so-called, extended to and north of the Harlem river, and the right to construct such other bridges as the company might be advised was necessary, were unconstitutional. Whether such concession was made or not, we hold such provisions to be unconstitutional, and further decide that all of these extraneous provisions referred to, dealing with subjects not expressed in the title of the act of 1867, are in conflict with the Constitution, and must be lopped off, leaving the act of 1867 and any legitimate amendments of the same to stand.

The act of 1867 deals with a single subject of great public interest, and it is the plain duty of this court to preserve the original scheme to construct a bridge over the East river, at the point indicated, if it can be done within recognized rules of law applicable to the case.

The general principle of construction is well settled that

where an act deals with a subject not expressed in its title, and the void provisions are separable from those that are lawful, and that which remains is capable of being executed, and stands complete in itself, it may be treated as constitutional. (*People ex rel. City of Rochester* v. *Briggs,* 50 N. Y. 553; *In the Matter of Van Antwerp,* 56 N. Y. 267; *Matter of Sackett and other Streets,* 74 N. Y. 95; *In the Matter of Village of Middletown,* 82 N. Y. 196; *People ex rel.* v. *Kenney,* 96 N. Y. 294, and cases cited at page 303.)

Every presumption is in favor of the validity of legislative acts.

We think it presents no legal difficulty to return to the single scheme of the act of 1867, with its legitimate amendments, and to declare it constitutional and enforceable.

The bridge company have submitted to us a separate book of exhibits containing plans and maps; one of them is a map and profile of the proposed bridge; the New York approach to the bridge begins on the east side of Third avenue, between Sixty-fourth and Sixty-fifth streets, and the Long Island approach begins at about Sunswick street, in Long Island City. It is quite impossible for us to determine as to the accuracy of this map and profile in detail, and we do not undertake to do so, but we do say that here is a general plan which seems to be within the scheme of the act of 1867, to wit, a bridge over the East river, with a proper approach from the surface in each city to the bridge level.

The appellant's counsel insists that to allow the East river bridge scheme to stand alone, wholly separated from any other structures attempted to be authorized by the act of 1892, would be to make a new law, not to enforce an old one. We make no new law, but we go back to the old one and enforce it. If the act of 1892 contained all the legislation on this subject, there might be difficulty in separating its void and valid provisions, but when regarded as an act amending the act of 1867, all difficulties vanish. The act of 1867 confers upon the corporation power to build the bridge, acquire land, and to erect abutments, approaches, walls, toll houses and other struc-

tures proper to the bridge, and for the opening of suitable avenues of approach to the bridge. All this is entirely. independent of the indefinite schemes for extending approaches, connection with railroad companies, consolidation and other matters.

We, therefore, hold that the New York and Long Island Bridge Company is an existing corporation authorized to build a bridge over the East river with a proper approach on each side from the surface, to reach the level of the bridge, as provided by the act of 1867 and its lawful amendments within the principles we have here laid down.

In order to keep this opinion within reasonable limits, we shall content ourselves with briefly stating the conclusions reached as to the other points presented by the appellant.

It is contended that the act of 1892 is obnoxious to article 1, section 9, of the Constitution, which reads as follows :

" The assent of two-thirds of the members elected to each branch of the legislature shall be requisite to every bill appropriating the public moneys or property for local or private purposes."

The claim is made that the act of 1892 appropriates lands to the use of the bridge company belonging to the state of New York.

There is no proof in this record that the title to lands taken was vested in the state of New York. There is proof that the bridge company dealt with the city of New York through the commissioners of the sinking fund to acquire title to the land on which to build its piers.

The various acts under which the bridge company is proceeding vest it with power to purchase and acquire lands, and it would seem to be very doubtful whether, in any of the acts, there is an appropriation of lands in a legal sense.

A route is laid out and the company is left to acquire title by purchase or condemnation. We think the journals of the senate and assembly were properly received in evidence, and they show conclusively that the act of 1892 received a two-thirds vote.

The Session Laws show the act of 1892 to have been passed, three-fifths being present; the certificates of the presiding officers of both houses attached to the original bill on file in the office of the secretary of state, show only the fact that three-fifths were present.

The journals were offered in evidence, not for the purpose of contradicting the certificates, but to supplement them, as they were defective.

We think it would defeat the provisions of the Constitution and the statute if in such an emergency as was here presented recourse could not be had to the journals of the two houses. (*People ex rel.* v. *Supervisors*, 8 N. Y. 317; *Darlington* v. *The Mayor*, 2 Robt. 277; affd., 31 N. Y. 164; *Rumsey* v. *N. Y. & N. E. R. R. Co.*, 130 N. Y. 88.)

As to appellant's point that the grant of power to extend the bridge approaches through First and Second avenues is void because in conflict with article 3, section 18, of the Constitution, in not requiring the consent of property owners and the local authorities, it need not be considered, as it relates to the portion of the act of 1892 which we have held to be void.

The appellant further urges that the company cannot maintain this proceeding because it has not complied with section 38 of the Rapid Transit Act, respecting the consent of the local authorities, etc.

This point rests upon the assumption that the bridge approach from Third avenue eastward does not differ, in substance, from the elevated roads now in use in the city of New York.

We do not think the Rapid Transit Act applies to the bridge company in erecting such a bridge, with its approaches, as we have decided it can build under the act of 1867 and its lawful amendments.

It is unnecessary to examine appellant's point based on chapter 212, Laws of 1894, as we have disposed of the question of forfeiture by reason of the company failing to commence work.

A point is taken as to the effect of chapter 225, Laws of 1893, authorizing any bridge company which maintains a bridge over a river connecting any city in the state, containing more than one million of inhabitants, with any other city in the state, to lay tracks and operate a railway upon its bridge.

The disposition we have made of the principal question in this case renders inapplicable much of the criticism bestowed upon this act by appellant's counsel.

The suggestion that, as at the time of the passage of the act of 1867, the eastern terminus of the bridge did not extend to any other city, the act of 1893 does not apply to the bridge company is not, in our opinion, sound.    Long Island City was incorporated in 1870 (Chapter 719, Laws of 1870), and the legislative recognition of the company since that date is sufficient to bring it within the provisions of the act of 1893.

We have examined the act of Congress (U. S. Stat. at Large, 1886–7, chap. 334, p. 468), under which the secretary of war has approved the plans of the proposed bridge structure.

The act of 1892 refers to this plan, and while it is admitted that the structure therein provided for is of such a substantial character as to permit laying thereon railway tracks, the plan itself does not provide for a railroad.

The right to operate a railroad on the bridge does not originate in the act of Congress of 1887, as Congress possesses no such power, but must be found in the act of 1893, if the bridge company shall, in the future, desire to modify its present plan of the bridge structure.

Any other questions in the case which we have failed to discuss have received careful examination.

We have to say in conclusion that we think it is competent for the New York and Long Island Bridge Company to construct its bridge and approaches under the act of 1867, as lawfully amended, with its New York approach running eastwardly from Third avenue, and if it is necessary to procure additional legislation in order to render successful and profitable the operation of the bridge, an application to the legisla-

ture will secure that result after all parties affected have been
fully heard in a matter of such great importance involving
vast property interests.

We do not undertake at this time to point out and eliminate
from the act of 1892 the provisions not germane or within the
scope of an amendment to the act of 1867.

The order appealed from should be affirmed, with costs.

All concur, except GRAY, J., who dissents upon the ground
that the act of 1892 violates section 16 of article 3 of the Con-
stitution of the state, which provides that "no private or
local bill which may be passed by the legislature shall embrace
more than one subject, and that shall be expressed in the
title." The subjects of this law are too interwoven to make
separation possible, without substituting for the law intended
by the legislature one it might not have been willing to pass.

Order affirmed.