# Supreme Court—Second Department.

June 8, 1897.

## PEOPLE v. ROBERT J. H. YOUNG.

**1. COURTS—EXTRAORDINARY TERM.**

The governor has power to appoint an extraordinary trial term of the supreme court and to name a justice to preside.

**2. SAME.**

The Constitution does not confer exclusive power upon the appellate division in each department to appoint all terms of the supreme court therein and to designate justices to preside thereat.

Appeal from a judgment of conviction for grand larceny.

George Wallace, for appellant.

William J. Youngs, for the People.

GOODRICH, P. J. In February, 1897, the governor, by proclamation, appointed an extraordinary trial term of the supreme court to be held in Queens county, and named Mr. Justice Dykman to hold it. At this term the appellant was brought to trial on an indictment for grand larceny in the second degree. His counsel objected to the jurisdiction of the court on the ground that the governor had no constitutional power to call such a term, and that section 234 of the Code of Civil Procedure, which authorized the governor to call an extraordinary term, is nullified by the judiciary article of the constitution which went into effect January 1, 1896. The objection was overruled, the accused excepted to the decision, and was thereafter found guilty, and sentenced to the penitentiary for one year and six months, and he is now undergoing imprisonment thereunder. The appellant also moved for a new trial on the grounds stated. His motion was denied, and he excepted to the decision.

The only question which arises on this appeal is whether the governor had power to appoint an extraordinary trial term of the supreme court, and to name a justice to preside, or whether that power, by the new constitution, is conferred exclusively upon the

justices of the appellate division.    The constitution of 1846 con-
tained the following provision (article 6, § 9) :

"The classification of the justices of the supreme court; the
times and place of holding the terms of the court of appeals, and
of the general and special terms of the supreme court, within the
several districts, and the circuit courts and courts of oyer and
terminer within the several counties, shall be provided for by law. "

While this provision was in force, the legislature passed sections
22 and 23 of the old Code of Procedure, providing that judges of
the several departments might appoint times and places for holding
terms of courts in their respective departments, and that the gov-
ernor might also appoint extraordinary terms when, in his judg-
ment the public good should require it.    This latter provision,
with some amendments, has continued to be a part of the Code.
The constitutional convention which met in 1867 prepared a revised
constitutional convention which was submitted to the popular
vote in 1869.    The only portion of that report which was adopted
was the judiciary article, in which article section 7 read as fol-
lows :

"Provision shall be made by law for holding the general terms
in each judicial district. "

But article 6, § 9, of the constitution of 1846, was omitted.
The present constitution contains no such provision as that cited
from the constitution of 1846, but contains the following (article
6, § 2, last clause):

"The justices of the appellate division in each department shall
have power to fix the times and places for holding special and
trial terms therein, and to assign the justices in the departments
to hold such terms ; or to make rules therefor. "

Section 234 of the Code of Civil Procedure, as it existed on
January 1, 1895, read as follows:

"The governor may, when, in his opinion, the public interest
so requires, appoint one or more extraordinary general or special
terms of the supreme court, or terms of a circuit court, or court of
oyer and terminer.    He must designate the time and place of
holding the same, and the name of the justice who shall hold or
preside at each term, except a general term ; and he must give
notice of the appointment, in such manner as, in his judgment,
the public interest requires. "

In 1895, and since the adoption of the new constitution, the section was amended to read as follows :

"The governor may, when, in his opinion the public interest so requires, appoint one or more extraordinary terms of the appellate division of the supreme court in any department, or of the special or trial terms of the supreme court. He must designate the time and place of holding the same, and name the justice who shall hold, or preside at such terms, except of the appellate division ; and he must give notice of the appointment in such manner as, in his judgment, the public interest requires. "

The appellant insists that the constitution confers exclusive power upon the appellate division in each department to appoint all terms of the supreme court therein, and designated justices to preside thereat, and that section 234, which existed before January 1, 1896, and as amended since that time, is inconsistent with the constitution, and is abrogated by article 1, § 16, Const. 1895, which declares that :

" Such acts of the legislature of this state as are now in force, shall be and continue the law of this state, subject to such alteration as the legislature shall make concerning the same. But all such parts of the common law, and such of said acts, or parts thereof, as are repugnant to this constitution, are hereby abrogated. "

The question, therefore, is clearly defined. Was it the intention of the constitutional convention to take from the governor the power reposed in him by the legislature, when, under the provisions of the constitution of 1846, it enacted the sections of the old Code referred to ? If that constitution had contained a clause in the exact words of section 234, and that clause had been omitted from the new constitution, there would have been no doubt of the intention of the convention. The fact that the conventions of 1845 and 1867 omitted the clause of the old constitutions, under which the legislature enacted old section 23 and new section 234, does not involve the necessity of holding that the convention of 1894 intended to abrogate the power of the governor in that respect and confer it upon the justices of the appellate division. The provisions may easily run side by side.

In the recent case of People v. Comptroller of City of Brooklyn,

152 N. Y. 399, 46 N. E. 852, the court of appeals, Mr. Chief Justice Andrews writing the opinion, said :

"It may be assumed as an undoubted proposition that a new constitution of a state, as the supreme law, supersedes all laws existing when the constitution takes effect, in conflict with its provisions, if it appears from a just construction of the instrument that it was intended to have a present binding and operative force upon the matter or thing upon which the conflict arises. If the intention was to take away a legislature power which previously existed, and to annul legislative acts passed in pursuance of such power, and not solely to lead them to be changed by the legislature so as to bring them into harmony with the new restriction, then all such acts must give way to the paramount authority, and they are, as to all future transactions, as though they had never been enacted. "

We have not been cited to any debate in the last constitutional convention upon the subject, and can find none in the record of its proceedings which will be serviceable in assisting our conclusions. There was a reference to the subject of the classification, when the judiciary article was under consideration, by Mr. Cochran, as follows :

"Mr. Cochran : As I understand this proposed judiciary amendment, it is to the effect that the assignments to the appellate division shall be made by the governor, and that the assignments to the special term and chambers and trial terms shall be made by the judges of the appellate division.    Mr. Bowers : I so understand the article." Record, vol. 3, p. 1307.

But from this we obtain no light as to its knowledge of the existence of the governor's power to call extraordinary terms. We can only assume that attention was not specifically called to the subject, and that the convention did not intend to change the existing law upon this subject.    We have already stated in Chittenden v. Wurster, 14 App. Div. 487, 43 N. Y. Supp. 1055, the familiar doctrine that the constitutional convention, in adopting the constitution, had in mind existing legislation, and we think this to be especially true of so important a statutory provision as the one in question.  If it had intended to abrogate the power of the governor to call extraordinary terms of the court, it surely would have done

so by express words.    Repeals by implication are not favored, and are never allowed except where inconsistency and repugnancy are plain and unavoidable.    Mark v. State, 97 N. Y. 575 ; Potter, Dwar. St. 155 ; Smith v. People. 47 N. Y. 330 ; Woods v. Board of Sup'rs, 136 N. Y. 403, 32 N. E. 1011.    The clearest enunciation of this principle which I have been able to find is the language of the United States supreme court in the case of  Supervisors v. Brogden, 112 U. S. 268, 5 Sup. Ct. 129 :

"It certainly cannot be said that a different construction is required by the obvious import of the words of the statute.    But if there were room for two constructions, both equally obvious and reasonable, the court must, in deference to the legislature of the state, assume that it did not overlook the provisions of the constitution, and designed the act of 1871 to take effect.    Our duty, therefore, is to adopt that construction which, without doing violence to the fair meaning of the words used, brings the statute into harmony with the provisions of the constitution. "

This citation has frequently met with the approval of our own court of appeals.    Bridge Co. v. Smith, 148 N. Y. 551, 42 N. E. 1088, and cases cited.    We do not, however, see any inconsistency or repugnancy between the provision of the constitution authorizing the appellate division to fix the times and places of holding the trial terms, and to assign justices thereto, and the section of the Code of Civil Procedure authorizing the governor to call extraordinary terms of the supreme court, and name a justice to preside.    Such, evidently, was the interpretation of this clause of the constitution by the legislature, a co-ordinate branch of the government, when, in 1895, it re-enacted section 234.

But there is a more radical view to be taken of the question arising out of the inherent power of the legislature.    In considering the constitution, we must not suppose that because individual rights are guarded and protected by it they must be considered as owing their origin to it.    The constitution measures the power of the representatives, but not the rights of the people.    These are before, above, and beyond the powers expressed in the constitution, which is a simple limitation upon the power of the government in the hands of its agents.    It is not, in any sense, the source of the sovereignty of the people, from whom all legitimate authority

springs. It is an apportionment of the sovereignty among repre-
sentatives, not the thing which confers sovereignty. That existed
from time immemorial in the very construction of society, before
written constitutions were ever thought of. The people may
elect to tie up their own hands, and the hands of their official repre-
sentatives in the legislature; but, until they have done so, the
legislature is supreme within its own sphere, and may exercise
sovereign power. Cooley, Const. Lim. pp. 39, 49. There is
danger of falling into a misapprehension arising from frequent re-
ference in reported cases to the constitution of the United States.
We all know that the federal government has only such powers
as were conferred upon it by the grants contained in the constitu-
tion adopted by the colonies or states which were then sovereign.
Precisely the contrary is true of this state and its relation to the
state constitution. Here the people framed the constitution, and
they and their official agencies have all such powers as are not
restricted by the language of the instrument. The ultimate source
of power is the people of the state. Any limitation of that power
is self imposed. Any restriction upon the exercise of that power
must be positive and clearly defined. If the people see fit to im-
pose upon themselves limitations within which ultimate power
must be exercised, such limitations must be clearly defined. The
legislature, composed of duly-elected representatives of the people,
even without any constitutional provision as to the extent of its
authority, has all the power of legislation which the people have,
unless such power is restrained by some constitutional provision.
If no authority were delegated to it by the constitution, it would
still have the right to exercise and declare the will of the people.
In re City of Buffalo (Super. Buff.) 15 N. Y. Supp. 858. This case
was reversed upon appeal, but this point was not questioned.
Such was the opinion of the court of appeals in People v. Draper,
15 N. Y. 594, where Shankland, J., said :

"The constitution vests all legislative power in the senate and
assembly, with certain restrictions and limitations imposed on that
body by the constitution itself. Independent of those limitations,
the legislative power is omnipotent within its proper sphere. The
legislature, in this respect, is the direct representative of the peo-
ple, and the delegate and depositary of their power."

The legislative power being thus "omnipotent within its proper sphere," we turn to the constitution to see whether it has been restricted, or limited in this regard. Article 3, § 1, declares : "The legislative power of this state shall be vested in the senate and assembly." The power thus defined is subject to certain specific inhibitions contained in the article, none of which related to the subject in question. It follows that, unless the conferring upon the justice of the appellate division of the power to fix the times and places for holding terms necessarily inhibited the legislature from authorizing the governor to call extraordinary terms in addition to those called by the appellate division, the legislature had the right to enact the provision in question. Indeed, it is not difficult to see that a contingency might arise demanding such action of the executive whose power covers the whole state. For instance, the appellate division, in arranging for terms within the second department, assigns all the justices of the court not designated for the appellate division to hold terms of court which occupy their whole time. If the pressure of public business should require an additional term, while the appellate division might order such additional term, it could only assign one of the justices of that department to preside thereat. While it may invite the voluntary service of a justice from another department to hold a term ( People v. Herrmann, 149 N. Y. 190, 43 N. E. 546 ), it has not power absolutely to assign such justice, no such authority being conferred upon it by the constitution. To assign a justice who is already holding a term within the department would suspend the business of that term, so that while the business of the extraordinary term would be provided for, the business of the regular term would be impeded and suspended. Such an illustration confirms our opinion that, while the constitutional convention might well authorize the appellate division to arrange the ordinary business of the department, occasions might naturally arise which would require the exercise by the governor of the power to call in a justice from another department,—a power which he had exercised for many years before the adoption of the present constitution,—and that it had no intention of changing the system as it then existed. We are therefore of opinion that section 234 of the Code of Civil Procedure is not in conflict with the constitution,

and that the legislature has plenary authority upon all purposes of civil government, not only under its ultimate power as the representative of the sovereignty of the people, but also by the express language of article 3, § 1, of the constitution, and that it had the right to confer upon the governor the power of calling the extraordinary term of the supreme court at which the prisoner was convicted.

All concur.